IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GILEAD SCIENCES, INC., GILEAD PHARMASSET LLC and GILEAD SCIENCES LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 13-2034 (GMS) |
| v. | ) ) | |
| ABBOTT LABORATORIES, INC. and ABBVIE INC., | ) ) ) | REDACTED PUBLIC VERSION |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS'
ANTI-SLAPP MOTION TO STRIKE AND MOTION TO DISMISS**

OF COUNSEL:

Michael A. Morin
David P. Frazier
James R. Barney
Casey L. Dwyer
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413

Nishla Keiser
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Seaport Lane
Boston, MA 02210

James F. Hurst
Samantha Maxfield
Scott Glauberman
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601

Charles Klein
WINSTON & STRAWN LLP
1700 K Street NW
Washington, DC 20006

February 18, 2014
Redacted Version filed 02/18/14

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
Derek J. Fahnestock (#4705)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
dfahnestock@mnat.com
  *Attorneys for Abbott Laboratories, Inc.
  and AbbVie Inc.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 3

      A.     Hepatitis C and the patent dispute ........................................................... 3

      B.     Gilead's state law claims ............................................................................ 4

ARGUMENT ................................................................................................................................... 5

    I.     CALIFORNIA'S ANTI-SLAPP STATUTE APPLIES TO
           STRIKE GILEAD'S TORT CLAIMS (COUNTS 5-7) ........................................ 5

      A.     California, not Delaware, law governs Gilead's tort claims. ..................... 5

      B.     California's anti-SLAPP statute bars Gilead's tort claims. ......................... 6

    II.    GILEAD'S STATE LAW TORT CLAIMS (COUNTS 5-7)
           SHOULD BE STRICKEN UNDER ANTI-SLAPP AND
           DISMISSED UNDER RULE 12. .......................................................................... 8

      A.     Federal patent law preempts Gilead's state law tort claims. ..................... 8

      B.     Gilead's tort claims are barred by the Noerr-Pennington
             doctrine. .................................................................................................. 10

      C.     Gilead's tort claims are based entirely on privileged, non-
             actionable conduct under California (and Delaware) law ....................... 11

      D.     Gilead fails to plead plausible tort claims. .............................................. 14

             1.     Deceptive Trade Practices (Count 5) ........................................... 14

             2.     Slander of Title (Count 6) ........................................................... 16

             3.     Tortious Interference with Prospective Business
                  Relations (Count 7) .................................................................... 17

    III.    <span style="color:red">REDACTED</span>    (COUNT 8) SHOULD BE
           DISMISSED. ....................................................................................................... 18

CONCLUSION ............................................................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

CASES

*800 Adept v. Murex Secs.*,
   539 F.3d 1354 (Fed. Cir. 2008)......................................................................................8

*Abbott Labs. v. Brennan*,
   952 F.2d 1346 (Fed. Cir. 1991)......................................................................................8

*Accenture Global Servs. GMBH v. Guidewire Software*,
   581 F. Supp. 2d 654 (D. Del. 2008)...........................................................................16

*Aoki v. Benihana*,
   839 F. Supp. 2d 759 (D. Del. 2012)..............................................................................6

*Appel v. Burman*,
   206 Cal. Rptr. 259 (Cal. App. 1984)..........................................................................16

*Armament Sys. and Procedures v. Emissive Energy*,
   2007 WL 2572304 (E.D. Wis.).....................................................................................9

*Armstrong Surgical Center v. Armstrong County Mem. Hosp.*,
   185 F.3d 154 (3d Cir. 1999).......................................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................................14

*Baldwin v. Adidas Am.*,
   2002 WL 2012562 (S.D. Ohio)...................................................................................13

*Barker v. Huang*,
   610 A.2d 1341 (Del. 1992) .........................................................................................13

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) .................................................................................6, 7

*Bavarian Nordic A/S v. Acambis*,
   486 F. Supp. 2d 354 (D. Del. 2007)...........................................................................14

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................14

*Blumenthal v. Drudge*,
   2001 WL 587860 (D.D.C.) ..........................................................................................6

*Boon Rawd Trading Int'l v. Paleewong Trading*,
  2011 WL 846639 (N.D. Cal.) ................................................................18

*Bove v. Goldberg*,
  2007 WL 446014 (Del. Super.)..............................................................13

*Briggs v. Eden Council*,
  969 P.2d 564 (1999)................................................................................7

*Butterworth v. United States*,
  112 U.S. 50 (1884)................................................................................12

*CardioVention v. Medtronic*,
  430 F. Supp. 2d 933 (D. Minn. 2006).....................................................9

*Carroll v. ABM Janitorial Servs.*,
  2013 WL 5230343 (D. Del.)..................................................................13

*Chamberlin v. Isen*,
  779 F.2d 522 (9th Cir. 1985) ................................................................12

*Chase Bank USA v. Hess*,
  2013 WL 867542 (D. Del.) ...................................................................14

*Cheminor Drugs v. Ethyl*,
  168 F.3d 119 (3d Cir. 1999)..................................................................10

*City of Columbia v. Omni Outdoor Advertising*,
  499 U.S. 365 (1991)..............................................................................10

*ComputerXpress v. Jackson*,
  113 Cal. Rptr. 2d 625 (Cal. App. 2001)..................................................7

*Delaware Solid Waste Auth. v. Eastern Shore Envtl.*,
  2002 WL 537691 (Del. Ch.) ............................................................15, 16

*Doe v. Gangland Prods.*,
  730 F.3d 946 (9th Cir. 2013) ..................................................................7

*Dow Chem. v. Exxon*,
  139 F.3d 1470 (Fed. Cir. 1998)...............................................................8

*Dow Chem. v. Exxon*,
  30 F. Supp. 2d 673 (D. Del. 1998).........................................................10

*DuPont Merck Pharm. v. Super. Ct.*,
  92 Cal. Rptr. 2d 755 (Cal. App. 2000)....................................................7

*ECC Sys. v. Tyco Int'l,*
   2007 WL 5861212 (Cal. Super.) ........................................................................16

*Edwards v. Centex Real Estate,*
   61 Cal. Rptr. 2d 518 (Cal. App. 1997) .............................................................11

*Equilon Enterprises v. Consumer Cause,*
   52 P.3d 685 (Cal. 2002) ........................................................................................7

*Fuqua Homes v. Beattie,*
   388 F.3d 618 (8th Cir. 2004) ...............................................................................6

*Gilead v. Merck,*
   No. 13-cv-04057-JSW (N.D. Cal.) .......................................................................4

*Globetrotter Software v. Elan Computer Group,*
   362 F.3d 1367 (Fed. Cir. 2004) .........................................................................10

*Godin v. Schencks,*
   629 F.3d 79 (1st Cir. 2010) ...................................................................................6

*Google v. American Blind & Wallpaper Factory,*
   2005 WL 832398 (N.D. Cal.) .............................................................................17

*Ground Zero Museum Workshop v. Wilson,*
   813 F. Supp. 2d 678 (D. Md. 2011) .....................................................................6

*Hegedus v. Ross,*
   2012 WL 2884792 (D. Del. 2012) ......................................................................17

*Henry v. Lake Charles Am. Press,*
   566 F.3d 164 (5th Cir. 2009) ...............................................................................6

*HIF Bio v. Yung Shin Pharm.,*
   600 F.3d 1347 (Fed. Cir. 2010) .........................................................................16

*Hoover v. Van Stone,*
   540 F. Supp. 1118 (D. Del. 1982) ......................................................................13

*Hunter Douglas v. Harmonic Design,*
   153 F.3d 1318 (Fed. Cir. 1998) ...........................................................................8

*Idenix Pharms. v. Gilead,*
   No. 13-cv-01987-LPS (D. Del.) ............................................................................4

*Idenix Pharms. v. Gilead,*
   No. 13-cv-13052-DJC (D. Mass.) .........................................................................4

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
   363 F. Supp. 2d 514 (E.D.N.Y. 2005) .................................................................................9

*In re Gabapentin Patent Litig.*,
   649 F. Supp. 2d 340 (D.N.J. 2009) ....................................................................................10

*In re Teleglobe Commc'ns*,
   493 F.3d 345 (3d Cir. 2007) ................................................................................................5

*J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.*,
   1988 WL 32012 (Del. Super.) ...........................................................................................14

*Joint Stock Society v. UDV N. Am.*,
   53 F. Supp. 2d 692 (D. Del. 1999) ...............................................................................14, 15

*Kersey v. Dickinson*,
   2010 WL 1838558 (D.N.J.) ................................................................................................12

*Killette v. Pittman*,
   1997 WL 657005 (4th Cir.) ................................................................................................16

*Kimberly-Clark Worldwide v. Cardinal Health 200*,
   2012 WL 3063974 (D. Del.) ...............................................................................................18

*Kingsdown Med. Consultants v. Hollister*,
   863 F.2d 867 (Fed. Cir. 1988) .............................................................................................4

*Knova Software v. Inquira*,
   2007 WL 1232186 (D. Del.) ...............................................................................................9

*Korea Supply v. Lockheed Martin*,
   63 P.3d 937 (Cal. 2003) ...............................................................................................17, 18

*Lockwood v. Sheppard, Mullin*,
   2009 WL 9419499 (C.D. Cal.) .......................................................................................8, 12

*Lockwood v. Sheppard, Mullin*,
   93 Cal. Rptr. 3d 220 (Cal. App. 2009) ...............................................................................12

*Logtale v. IKOR*,
   2013 WL 4427254 (N.D. Cal.) ...........................................................................................17

*Lorenz v. Colgate-Palmolive-Peet*,
   122 F.2d 875 (3d Cir. 1941) ...............................................................................................12

*Mainstreet Bank v. Nat'l Excavating*,
   791 F. Supp. 2d 520 (E.D. Va. 2011) .................................................................................14

*Marino v. Cross Country Bank*,
    2003 WL 503257 (D. Del.) ................................................................................18

*Markman v. Westview Instruments*,
    52 F.3d 967 (Fed. Cir. 1995) ............................................................................12

*Melea v. Quality Models*,
    345 F. Supp. 2d 743 (E.D. Mich. 2004) ...........................................................10

*Midwest Indus. v. Karavan Trailers*,
    175 F.3d 1356 (Fed. Cir. 1999) ..........................................................................8

*Mindys Cosmetics, Inc. v. Dakar*,
    611 F.3d 590 (9th Cir. 2010) ........................................................................7, 12

*Natural Wealth Real Estate v. Cohen*,
    2006 WL 3500624 (D. Colo.) .............................................................................6

*Newsham v. Lockheed Missiles*,
    190 F.3d 963 (9th Cir. 1999) ..............................................................................6

*Nix v. Sawyer*,
    466 A.2d 407 (Del. Super. 1983) ......................................................................13

*Nobelpharma AB v. Implant Innovations*,
    141 F.3d 1059 (Fed. Cir. 1998) ........................................................................10

*OG Int'l v. Ubisoft Enter.*,
    2012 WL 4809174 (N.D. Cal.) .........................................................................10

*Oja v. U.S. Army Corps of Eng'rs*,
    440 F.3d 1122 (9th Cir. 2006) ............................................................................6

*Pharmastem Therapeutics v. Viacel*,
    2003 WL 22244704 (D. Del.) ...........................................................................12

*Piping Rock v. David Lerner*,
    946 F. Supp. 2d 957 (N.D. Cal. 2013) ..............................................................18

*Prakash v. Altadis U.S.A.*,
    2012 WL 1109918 (N.D. Ohio) ........................................................................13

*Price v. Stossel*,
    2008 WL 2434137 (S.D.N.Y.) ............................................................................6

*Professional Real Estate Investors v. Columbia Pictures Indus.*,
    508 U.S. 49 (1993) ............................................................................................10

*Ray Charles Found. v. Robinson*,
  919 F. Supp. 2d 1054 (C.D. Cal. 2013) ................................................................7

*Rodriguez v. Panayiotou*,
  314 F.3d 979 (9th Cir. 2002) ..............................................................................11

*Roth v. Rhodes*,
  25 Cal. App. 4th 530 (1994) ...............................................................................17

*Sammons v. Hartford Underwriters Ins. Co.*,
  2010 WL 1267222 (Del. Super.)..........................................................................14

*Semiconductor Energy Lab. v. Samsung Elecs.*,
  204 F.3d 1368 (Fed. Cir. 2000)...........................................................................8

*Silberg v. Anderson*,
  786 P.2d 365 (Cal. 1990) ....................................................................................11

*Simpson Strong-Tie v. Gore*,
  230 P.3d 1117 (Cal. 2010) ...................................................................................7

*Sinnott v. Thompson*,
  32 A.3d 351 (Del. 2011) ......................................................................................5

*Stamas v. County of Madera*,
  795 F. Supp. 2d 1047 (E.D. Cal. 2011)................................................................11

*Sybersound Records v. UAV*,
  517 F.3d 1137 (9th Cir. 2008) ............................................................................18

*Sys. Operations v. Scientific Games Dev.*,
  555 F.2d 1131 (3d Cir. 1977)................................................................................6

*Tax Track Sys. v. New Investor World*,
  478 F.3d 783 (7th Cir. 2007) ..............................................................................19

*Therasense v. Becton, Dickinson*,
  649 F.3d 1276 (Fed. Cir. 2011)............................................................................9

*Tiedemann v. Super. Ct.*,
  148 Cal. Rptr. 242 (Cal. App. 1978) ...................................................................11

*United States v. American Bell Tel.*,
  128 U.S. 315 (1888)............................................................................................12

*USANA Health Sciences v. Minkow*,
  2008 WL 619287 (D. Utah) ..................................................................................6

*Versatile Plastics v. Sknowbest!*,
  247 F. Supp. 2d 1098 (E.D. Wis. 2003)................................................................10

*W. Elec. v. Piezo Tech.*,
  860 F.2d 428 (Fed. Cir. 1988)..............................................................................12

*Westside Ctr. Assocs. v. Safeway Stores 23*,
  42 Cal. App. 4th 507 (1996) ................................................................................17

*Wilco AG v. Packaging Technologies & Inspection LLC*,
  615 F. Supp. 2d 320 (D. Del. 2009)................................................................14, 18

*Zdenek Marek v. Old Navy*,
  348 F. Supp. 2d 275 (S.D.N.Y. 2004)..................................................................12

## OTHER AUTHORITIES

21 C.F.R. § 202.1(e)(6)(i) ...........................................................................................1

*Restatement (Second) of Conflict of Laws* § 150 cmt. f..............................................5

*Restatement (Second) of Conflict of Laws* § 151 cmt. c.............................................5

## RULES AND STATUTES

Cal. Civ. Code § 47(b) .............................................................................................11

Cal. Civ. Proc. Code § 425.16 ................................................................................6, 7

Deceptive Trade Practices Act § 2532(a) ................................................................14

Fed. R. Civ. P. 8 .....................................................................................................14

Fed. R. Civ. P. 9 .....................................................................................................14

Fed. R. Civ. P. 12 ..................................................................................................1, 8

Uniform Act § 2(a)...................................................................................................15

## **INTRODUCTION**

Gilead admits it intends to infringe AbbVie's patents on a revolutionary new method of treating hepatitis C, by selling a combination drug treatment for which it recently filed a New Drug Application. The infringement will be willful.

In a preemptive bid to justify the planned infringement, Gilead filed this declaratory judgment action. But Gilead's Complaint does not simply allege that AbbVie's patents are invalid. Instead, paragraph after paragraph disparages AbbVie's scientists, lawyers, management, inventions, and competing combination drug therapy. Gilead has taken advantage of the litigation privilege in this Court to make statements that FDA regulations would otherwise bar, 21 C.F.R. § 202.1(e)(6)(i), or that could subject it to defamation claims. For example:

- Gilead repeatedly alleges that AbbVie and its employees committed inequitable conduct by failing to provide the Patent and Trademark Office (PTO) with a copy of Gilead's own patent application (which has not issued as a patent). But, buried much later in the Complaint, Gilead admits that the PTO allowed AbbVie additional, broader patent claims covering the drug combination at issue here even *after* considering that very same Gilead patent application that AbbVie supposedly hid.

- Gilead accuses AbbVie, which has pioneered treatments and cures for dozens of diseases, and which invests more than $2.8 billion per year in research and development, of being uninterested in the "advancement of science" and unconcerned with the welfare of hepatitis C patients.

- Gilead disparages AbbVie's phase III hepatitis C drugs as "inferior," while knowing that AbbVie's hepatitis C program is, to date, the largest all-oral, interferon-free clinical program in genotype 1 patients, with high treatment rates even in the most difficult-to-treat patients.

- Gilead repeatedly alleges there was something sinister about AbbVie pursuing and securing patent claims that cover Gilead's products, characterizing it as a "fraudulent scheme." However, Gilead knows full well there is nothing wrong with pursuing such claims and, in fact, is pursuing its own claims covering a drug owned by another company.

Only AbbVie's respect for this Court's judicial economy prevented it from moving under Rule 12(f) to strike all of this "immaterial, impertinent, [and] scandalous matter."

Continuing its preemptive attempt to excuse its infringement, Gilead inserted in the Complaint four needless, distracting, and meritless state law claims. These are claims for

- 1 -

deceptive trade practices, slander of title, tortious interference with prospective business relations, and   REDACTED   . In its lengthy Complaint, Gilead never identifies a single disparaging statement by AbbVie, a single business relationship that has suffered, or a single dollar of damages.

AbbVie asks this Court to strike the three tort claims (Counts 5-7) under California's anti-SLAPP statute, which applies here and protects from baseless and retaliatory "Strategic Lawsuits Against Public Participation" (SLAPPs) parties who have done nothing more than exercise First Amendment rights. The anti-SLAPP statute provides a substantive immunity from suit to defendants facing meritless claims attacking their protected, speech-related activities, in order to prevent litigants like Gilead from inflicting damage through litigation.

Gilead's tort claims are based entirely on AbbVie's exercise of its right to petition the government by filing patent applications with the PTO. Gilead cannot carry its statutory burden of showing it will prevail on the merits, so its claims should be stricken. AbbVie should also be awarded its attorneys' fees for this motion.

Even if Delaware law applies, as Gilead alleges, the state law claims should be dismissed as fatally flawed. Counts 5-7 suffer from several incurable problems. First, the patent laws preempt them. The Federal Circuit does not allow plaintiffs to use state tort suits as a collateral attack on the PTO's proceedings, which is what Gilead attempts here. Each tort claim is based solely on alleged inequitable conduct during those proceedings. The other two problems are related: because Gilead's claims are based entirely on AbbVie's statements to the PTO, those claims violate (1) the *Noerr-Pennington* doctrine and (2) California's (and Delaware's) absolute privilege for statements made in quasi-judicial proceedings such as PTO proceedings. Finally, each tort claim is defectively pleaded. For example, one of the cited sections of the Deceptive Trade Practices Act applies only to misleading trade names; another applies only to deceptive advertising. But AbbVie is not alleged to be using *any* trade names or advertising.

Count 8,

<div style="text-align:center; color:red;">

# REDACTED

</div>

Gilead's unnecessary and retaliatory state law claims can only distract the parties and multiply the number of fruitless issues for this Court to decide. AbbVie respectfully asks this Court to strike the tort law claims, award attorneys' fees, dismiss the   REDACTED   , disregard the baseless and irrelevant matter in Gilead's Complaint, and focus the parties' attention on resolving this patent dispute.

## BACKGROUND

### A.      Hepatitis C and the patent dispute

Hepatitis C is a serious liver disease. (Compl. ¶¶ 2, 36.) The traditional treatments for it are lengthy and only variably successful, with unpleasant side effects caused by the injectable drug interferon. (*Id.* ¶ 2.) AbbVie, Gilead, and other companies are developing better treatments. (*Id.* ¶¶ 2-4.)

AbbVie invented a revolutionary method of treating hepatitis C, with shorter treatment durations and no interferon. AbbVie took its invention to the PTO and obtained two patents. (*Id.* ¶ 15.) Gilead recently filed a New Drug Application (NDA) with the FDA for its Sofosbuvir (PSI-7977) and Ledipasvir (GS-5885) combination product for treatment of hepatitis C without interferon for 8 or 12 weeks, the combination use of which for 12 weeks Gilead admits falls within the scope of AbbVie's patent claims. (*Id.* ¶¶ 16-17.) Gilead claims to be the true inventor of this treatment method. (*Id.* ¶ 16.) Both the PTO and AbbVie disagree.

Gilead's inequitable conduct allegations accuse AbbVie of withholding a Gilead patent application (which has not issued as a patent in the U.S.) from the PTO. (*Id*. ¶ 163.) But as Gilead admits, even after AbbVie disclosed that patent application, the PTO issued a notice of allowance over AbbVie's "broader claims" that cover "the use of" Gilead's drug combination. (*Id*. ¶¶ 174-176; *see also id*. ¶ 231(d).)

Gilead also alleges that AbbVie engaged in an "unlawful scheme" to procure patents through inequitable conduct and keep Gilead's treatment off the market. (*Id*. ¶ 12.) But, Gilead ignores the principle that "there is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; … its genesis in the marketplace is simply irrelevant and cannot of itself evidence deceitful intent." *Kingsdown Med. Consultants v. Hollister*, 863 F.2d 867, 874 (Fed. Cir. 1988).

Gilead's claim that AbbVie's patents are inherently nefarious (Compl. ¶ 20) is further belied by the fact that Gilead itself filed a patent application covering combinations with Pharmasset's Sofosbuvir in September 2011 (*id*. ¶¶ 10, 80), before Gilead acquired Pharmasset in January 2012. (*Id*. ¶ 9.) Thus, like AbbVie, Gilead filed an application covering a combination with Sofosbuvir at a time when Gilead did not own it.

What's more, Gilead is now litigating with three other companies over Sofosbuvir. Roche asserts an exclusive license to Sofosbuvir, based on an earlier collaboration with Pharmasset.

<span style="color:red">REDACTED</span>. In addition, Idenix and Merck have alleged that Sofosbuvir infringes their patent rights.[1]

### B.    Gilead's state law claims

The Complaint's separate section for state law claims is based on the exact same inequitable conduct allegations on which its federal inequitable conduct claims are based: AbbVie made "knowing and intentional misrepresentations to the PTO, and intentionally failed

---

[1]    *Gilead v. Merck*, No. 13-cv-04057-JSW (N.D. Cal.); *Idenix Pharms. v. Gilead*, No. 13-cv-01987-LPS (D. Del.); *Idenix Pharms. v. Gilead*, No. 13-cv-13052-DJC (D. Mass.).

to disclose material information to the PTO." (Compl. ¶ 231.) The Complaint admits that "these state law claims necessarily depend on the determination of the validity and enforceability of AbbVie's patents." (*Id.* ¶ 233.) These are the tort counts, all pleaded under Delaware law:

- Count 5: violations of the Delaware Deceptive Trade Practices Act, based on "AbbVie's misrepresentations to the PTO and intentional failure to disclose material information to the PTO." (*Id.* ¶ 236.)

- Count 6: slander of title, which occurred at the PTO, where AbbVie "falsely claim[ed] to have invented [the] treatment." (*Id.* ¶ 246.)

- Count 7: tortious interference with prospective business relations, accomplished by "false statements to the U.S. Patent Office." (*Id.* ¶ 251.)

<div align="center" style="color:red">REDACTED</div>

## ARGUMENT

**I.   CALIFORNIA'S ANTI-SLAPP STATUTE APPLIES TO STRIKE GILEAD'S TORT CLAIMS (COUNTS 5-7).**

**A.   California, not Delaware, law governs Gilead's tort claims.**

To determine what state's laws govern Gilead's tort claims, this Court applies "the choice-of-law rules of Delaware, the forum state." *In re Teleglobe Commc'ns*, 493 F.3d 345, 358 (3d Cir. 2007). Delaware follows the choice-of-law rules in the Restatement (Second) of Conflict of Laws. *Sinnott v. Thompson*, 32 A.3d 351, 353-54 (Del. 2011).

The Restatement points to California law as governing Gilead's tort claims. Where a claim is based on an allegedly false statement causing economic harm, and the statement is an "aggregate communication" effectively published in more than one state, the claim is governed by the state where the injury occurred. *Restatement* § 151 cmt. c; § 150 cmt. f. For a company, like Gilead, that means its principal place of business: California. *Id.*; Compl. ¶¶ 22-23.

The statements here are "aggregate communications." They were made to the PTO (*id.* ¶¶ 96, 98-103, 112-82), which published them on its website (*id.* ¶ 148). "A typical Internet publication … is considered an aggregate communication." *Aoki v. Benihana*, 839 F. Supp. 2d 759, 765 (D. Del. 2012); *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1131 (9th Cir. 2006); *Fuqua Homes v. Beattie*, 388 F.3d 618, 622 (8th Cir. 2004). Courts following the Restatement consistently apply to aggregate false statement claims the law of a corporate plaintiff's principal place of business.[2] California law thus governs Gilead's tort claims.

## B.    California's anti-SLAPP statute bars Gilead's tort claims.

California's anti-SLAPP statute applies to all of Gilead's tort claims even though they were filed in a Delaware court. Courts in other states frequently apply California's anti-SLAPP statute. *USANA Health Sciences v. Minkow*, 2008 WL 619287, at *3 (D. Utah); *Blumenthal v. Drudge*, 2001 WL 587860, at *2 (D.D.C.); *Price v. Stossel*, 2008 WL 2434137, at *6 (S.D.N.Y.). Anti-SLAPP statutes apply in federal court because they are not procedural; they confer a "substantive immunity from suit[s]." *Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003); *Newsham v. Lockheed Missiles*, 190 F.3d 963, 973 (9th Cir. 1999); *Godin v. Schencks*, 629 F.3d 79, 87 (1st Cir. 2010); *Henry v. Lake Charles Am. Press*, 566 F.3d 164, 168-69 (5th Cir. 2009).

California's anti-SLAPP statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1). This immunity is "construed broadly." *Id.* § 425.16(a). The law contains an exception for certain commercial speech, but the California Supreme Court has construed that exception narrowly, and it is directed principally at false

---

[2]    *Aoki*, 839 F. Supp. 2d at 766; *Fuqua Homes*, 388 F.3d at 622; *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 700 (D. Md. 2011); *Natural Wealth Real Estate v. Cohen*, 2006 WL 3500624, at *4 (D. Colo.); *accord Sys. Operations v. Scientific Games Dev.*, 555 F.2d 1131, 1138 (3d Cir. 1977).

advertising, so it does not apply here. *Id.* § 425.17(c); *Simpson Strong-Tie v. Gore*, 230 P.3d 1117, 1130 (Cal. 2010).

Applying California's anti-SLAPP law is a two-step process. First, AbbVie makes a *prima facie* showing that its activities are protected speech or petitioning. *Batzel*, 333 F.3d at 1024; *Doe v. Gangland Prods.*, 730 F.3d 946, 953 (9th Cir. 2013). Second, the burden shifts to Gilead to show likely success on the merits. *Id.*; *Equilon Enterprises v. Consumer Cause*, 52 P.3d 685, 694 (Cal. 2002). If Gilead fails to make this showing, its claims are struck and Gilead pays AbbVie's attorneys' fees. Cal. Civ. Proc. Code §§ 425.16(a), (c).

Step one: AbbVie's statements to the PTO are classic examples of protected speech and petitioning. The statute applies to any written statement that is "made before," or "in connection with an issue under consideration or review by," an "official proceeding authorized by law." *Id.* § 425.16(e)(1), (2). Petitions to government agencies qualify. "[T]he constitutional right to petition includes the basic act of … seeking administrative action." *Briggs v. Eden Council*, 969 P.2d 564, 569-70 (1999); *ComputerXpress v. Jackson*, 113 Cal. Rptr. 2d 625, 640 (Cal. App. 2001); *DuPont Merck Pharm. v. Super. Ct.*, 92 Cal. Rptr. 2d 755, 759 (Cal. App. 2000). California federal courts have held that statements made by petitioners to the PTO qualify. In particular, trademark applications to the PTO, as well as copyright termination notices to the U.S. Copyright Office, are protected by the anti-SLAPP statute. *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 596-97 (9th Cir. 2010) (applying the anti-SLAPP statute to trademark applications); *Ray Charles Found. v. Robinson*, 919 F. Supp. 2d 1054, 1063-64 (C.D. Cal. 2013) (applying the statute to copyright termination notices). Thus, AbbVie's statements to the PTO easily establish a *prima facie* case of protected activity.

Step two: Gilead cannot carry its burden of showing likely success. As explained below, the state law counts of Gilead's Complaint are all barred and fail to state a claim. Thus, they should be stricken under the anti-SLAPP statute and attorneys' fees awarded to AbbVie.

- 7 -

## II.   GILEAD'S STATE LAW TORT CLAIMS (COUNTS 5-7) SHOULD BE STRICKEN UNDER ANTI-SLAPP AND DISMISSED UNDER RULE 12.

### A.   Federal patent law preempts Gilead's state law tort claims.

The Federal Circuit, for obvious reasons, enforces a "general rule" against "collateral attack, under [state] common law, on proceedings before the PTO." *Abbott Labs. v. Brennan*, 952 F.2d 1346, 1357 (Fed. Cir. 1991). A tort claim based on "inequitable or other unsavory conduct" at the PTO is barred. *Id.* at 1355. Patent law provides the sole means for challenging inequitable conduct: "[a]n additional state action would be an inappropriate collateral intrusion on the regulatory procedures of the PTO, under the guise of a complaint sounding in tort, … and is contrary to Congress' preemptive regulation." *Id.* at 1357.

Patent law therefore preempts state law claims that are "based entirely upon bad faith misconduct before the PTO." *Dow Chem. v. Exxon*, 139 F.3d 1470, 1477 (Fed. Cir. 1998); *see also Semiconductor Energy Lab. v. Samsung Elecs.*, 204 F.3d 1368, 1382 (Fed. Cir. 2000) ("predicated so squarely on the acts of inequitable conduct"); *Lockwood v. Sheppard, Mullin*, 2009 WL 9419499, at *7, 11 (C.D. Cal.) (same). A state law "tort action [based] on conduct that is … governed by federal patent law," such as conduct in PTO proceedings, must be dismissed. *Hunter Douglas v. Harmonic Design*, 153 F.3d 1318, 1335 (Fed. Cir. 1998).[3]

The only way around the rule would be to prove "bad faith misconduct in the marketplace," such as bad faith "threats … to sue" the plaintiff's customers. *Dow*, 139 F.3d at 1472, 1477. In short, a tort must occur "not in the PTO, but later in the marketplace." *Id.* at 1477; *see also 800 Adept v. Murex Secs.*, 539 F.3d 1354, 1369 (Fed. Cir. 2008) (tort claims "based on enforcing a patent in the marketplace"). A tort cannot turn "solely on inequitable conduct" at the PTO. *Dow*, 139 F.3d at 1476.

---

[3]   The Federal Circuit later overruled *Hunter Douglas*'s statement that preemption decisions are made under the regional circuit's law. *Midwest Indus. v. Karavan Trailers*, 175 F.3d 1356, 1358-59 (Fed. Cir. 1999) (*en banc*). But there was no regional circuit guidance in *Hunter Douglas*, so the court used its own "plenary authority" on preemption. *Hunter Douglas*, 153 F.3d at 1333.

The state law tort claims, pleaded in Counts 5, 6, and 7, are founded exclusively on "misrepresentations to the PTO," "false claim[s]" at the PTO, and "false statements to the U.S. Patent Office." (Compl. ¶¶ 236, 246, 251.) The state law section of the Complaint alleges that all of the tort claims are based purely on deceiving the PTO, and the instances of deception that it gives are the same as those given in Counts 2 and 4, the inequitable conduct counts under patent law. (*Id.* ¶¶ 200-06, 218-24, 231.) District courts readily dismiss state law tort claims that are based solely on the patentee's conduct at the PTO.[4]

There are no allegations in Gilead's Complaint of bad faith misconduct *in the marketplace*. For instance, AbbVie is not alleged to have enforced its patents in bad faith against Gilead's customers. Gilead has no customers for this particular drug combination. Without FDA approval, Gilead cannot market or sell this product, so no "marketplace" even exists for the combination treatment at issue here.

This Court is no doubt aware of the Federal Circuit's dim view of inequitable conduct disputes. In *Therasense v. Becton, Dickinson*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (*en banc*), Chief Judge Rader recounted "the absolute plague" imposed "not only on the courts but also the entire patent system" by infringers "charging inequitable conduct in almost every major patent case." The Federal Circuit therefore made it significantly more difficult to prevail on inequitable conduct claims, *id.* at 1290, and would no doubt continue to reject the attempts of infringers like Gilead to multiply the number of inequitable conduct disputes by exporting them into state law tort causes of action.

---

[4] *CardioVention v. Medtronic*, 430 F. Supp. 2d 933, 941 (D. Minn. 2006) (claim for tortious interference with prospective business advantage preempted because it "does not allege any actionable conduct other than conduct before the PTO"); *Armament Sys. and Procedures v. Emissive Energy*, 2007 WL 2572304, at *5 (E.D. Wis.) ("a tack-on claim that merely echoes the inequitable conduct allegations"); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514, 545 (E.D.N.Y. 2005); *cf. Knova Software v. Inquira*, 2007 WL 1232186, at *2 (D. Del.) (claim for intentional interference with prospective economic advantage preempted because it "rest[s] solely on the conduct of patent infringement").

**B.      Gilead's tort claims are barred by the *Noerr-Pennington* doctrine.**

The federal *Noerr-Pennington* doctrine also bars Gilead's tort claims. It provides

sweeping immunity under the First Amendment from liability for torts, like the ones Gilead

alleges, based on petitions to the government. *Dow Chem. v. Exxon*, 30 F. Supp. 2d 673, 691-92

(D. Del. 1998); *Globetrotter Software v. Elan Computer Group*, 362 F.3d 1367, 1376 (Fed. Cir.

2004). Courts have consistently held that the doctrine applies to PTO proceedings. *Nobelpharma*

*AB v. Implant Innovations*, 141 F.3d 1059, 1068 (Fed. Cir. 1998); *Dow*, 30 F. Supp. 2d at 691-

92; *In re Gabapentin Patent Litig.*, 649 F. Supp. 2d 340, 367-68 (D.N.J. 2009). And the doctrine

has been specifically held to bar the causes of action that Gilead asserts in this case.[5]

There are two exceptions, but neither applies here. The first permits certain antitrust

claims. *Nobelpharma*, 141 F.3d at 1068-69; *Dow Chem.*, 30 F. Supp. 2d at 692. Gilead has no

antitrust claim, so this exception cannot apply.

The second exception excludes from the doctrine's coverage "sham" proceedings,

including "sham" petitions to agencies. *City of Columbia v. Omni Outdoor Advertising*, 499 U.S.

365, 380 (1991); *Nobelpharma*, 141 F.3d at 1071-72. "Sham" has a specific meaning, and

Gilead's Complaint shows there is no sham here. "A 'sham' situation involves a defendant

whose activities are not genuinely aimed at procuring favorable government action at all." *City*

*of Columbia*, 499 U.S. at 380. By definition, a petition that achieves the government action

sought, even if it harms a competitor, cannot be a "sham." *Id.*; *Armstrong Surgical Center v.*

*Armstrong County Mem. Hosp.*, 185 F.3d 154, 158 n.2 (3d Cir. 1999). There is no "sham" even

if allegedly "improper means" are used to further the petition. *Id.*; *see also Professional Real*

*Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 60 n.5 (1993).

---

[5]     *Cheminor Drugs v. Ethyl*, 168 F.3d 119, 128 (3d Cir. 1999) (malicious prosecution, tortious interference with contract or prospective economic advantage, unfair competition); *OG Int'l v. Ubisoft Enter.*, 2012 WL 4809174, at *1-2 (N.D. Cal.) (intentional interference with contractual relations, trade libel, unfair competition); *Melea v. Quality Models*, 345 F. Supp. 2d 743, 758 (E.D. Mich. 2004) (claims arising out of patent dispute); *Versatile Plastics v. Sknowbest!*, 247 F. Supp. 2d 1098, 1099, 1103 (E.D. Wis. 2003) (claims accompanying a patent declaratory judgment action).

Gilead's Complaint alleges that AbbVie successfully applied for patents because it wanted to obtain them to exclude Gilead's drug combination from the market. AbbVie "sought to receive patents based on those applications" and was "seeking to obtain patent protection." (Compl. ¶¶ 14, 136.) Instead of alleging a "sham," the Complaint alleges what the Supreme Court has held is not a "sham": a petition aimed, successfully, at securing a government benefit. Accordingly, Gilead's tort claims fail.

### C.   Gilead's tort claims are based entirely on privileged, non-actionable conduct under California (and Delaware) law.

California law provides an absolute privilege that bars tort liability for statements made in connection with any judicial proceeding or "any other official proceeding authorized by law." Cal. Civ. Code § 47(b). The immunity applies "to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 786 P.2d 365, 369 (Cal. 1990). "The California courts have applied the privilege quite expansively." *Rodriguez v. Panayiotou*, 314 F.3d 979, 988 (9th Cir. 2002). It extends to "*any* communication, whether or not it is a publication, and to *all* torts other than malicious prosecution." *Edwards v. Centex Real Estate*, 61 Cal. Rptr. 2d 518, 526 (Cal. App. 1997) (emp. in original).

As it applies here, the rule is that a "communication to an official agency which is designed to prompt action is deemed part of an official proceeding for purposes of statutory litigation privilege." *Stamas v. County of Madera*, 795 F. Supp. 2d 1047, 1070 (E.D. Cal. 2011). Courts have granted immunity to a broad range of communications with agencies. *See, e.g.*, *Tiedemann v. Super. Ct.*, 148 Cal. Rptr. 242, 247-48 (Cal. App. 1978) (IRS).

All of Gilead's tort claims are based solely on "misrepresentations to the PTO," "false claim[s]" at the PTO, and "false statements to the U.S. Patent Office." (Compl. ¶¶ 236, 246, 251.) And AbbVie's statements to the PTO were inarguably relevant to the PTO's proceedings. The statements of inventorship, for example, bear directly on whether a patent should issue.

- 11 -

Thus, the only question is whether the PTO conducts quasi-judicial proceedings to which the absolute privilege applies. It does. The Supreme Court and the Federal and Third Circuits all agree that PTO proceedings are quasi-judicial. "That it was intended that the Commissioner of Patents, in issuing or withholding patents … should exercise quasi-judicial functions, is apparent from the nature of the examinations and decision he is required to make." *Butterworth v. United States*, 112 U.S. 50, 67 (1884); *see also United States v. American Bell Tel.*, 128 U.S. 315, 363 (1888) ("The patent … is the result of a course of proceeding, quasi-judicial in its nature."). For that reason, "[p]atent examiners are quasi-judicial officials," and PTO decisions are quasi-judicial. *W. Elec. v. Piezo Tech.*, 860 F.2d 428, 431 (Fed. Cir. 1988); *Markman v. Westview Instruments*, 52 F.3d 967, 986 (Fed. Cir. 1995); *Lorenz v. Colgate-Palmolive-Peet*, 122 F.2d 875, 877 (3d Cir. 1941); *Chamberlin v. Isen*, 779 F.2d 522, 524 (9th Cir. 1985) ("USPTO employees perform a 'quasi-judicial' function in examining patent applications."). This Court has made the similar point that the European Patent Office is "quasi-judicial" in nature. *Pharmastem Therapeutics v. Viacel*, 2003 WL 22244704, at *3 (D. Del.) (Sleet, J.).

Applying these principles, the only court in California to address this issue held that statements to the PTO made in patent proceedings are absolutely privileged. The court dismissed a claim for tortious interference with prospective economic relations that, like Gilead's tort claims, was based on allegedly fraudulent statements to the PTO. *Lockwood*, 2009 WL 9419499, at *10; *accord Lockwood v. Sheppard, Mullin*, 93 Cal. Rptr. 3d 220, 223-24 (Cal. App. 2009).[6] Other courts concur. *Kersey v. Dickinson*, 2010 WL 1838558, at *5 (D.N.J.) (privilege covers letters written by an attorney that "clearly relate to the prosecution of patents before the [PTO], a quasi-judicial procedure"), *aff'd*, 2011 WL 2516162, at *4 (3d Cir.); *Zdenek Marek v. Old Navy*, 348 F. Supp. 2d 275, 282-83 (S.D.N.Y. 2004) (privilege covers statements made during PTO

---

[6]    In another case, the Ninth Circuit held the privilege inapplicable to a claim that an attorney mishandled a trademark application at the PTO. To rule otherwise would have effectively abolished the tort of legal malpractice. *Mindys*, 611 F.3d at 600.

trademark cancelation proceeding); *Baldwin v. Adidas Am.*, 2002 WL 2012562, at \*1-2 (S.D. Ohio) (same); *Prakash v. Altadis U.S.A.*, 2012 WL 1109918, at \*11 (N.D. Ohio) (same).

If this Court holds that the laws of Delaware, rather than California, govern the tort claims, they likewise fail under Delaware's law of privilege. The absolute privilege in Delaware exempts from civil liability all statements that relate to the judicial proceeding in which they are made. *Barker v. Huang*, 610 A.2d 1341, 1344-45 (Del. 1992). As its name indicates, "the protection afforded by the privilege is absolute; so long as the statement is pertinent to, and made in the course of, a judicial proceeding, even a showing of malice will not divest the statement from its immune status." *Id.* (quoting *Hoover v. Van Stone*, 540 F. Supp. 1118, 1122 (D. Del. 1982)). This absolute privilege bars all causes of action, "regardless of the tort theory by which the plaintiff seeks to impose liability." *Barker*, 610 A.2d at 1349 (defamation, intentional infliction of emotional distress, invasion of privacy); *see also Bove v. Goldberg*, 2007 WL 446014, at \*4 (Del. Super.) (tortious interference with business relationships or expectancies); *Hoover*, 540 F. Supp. at 1120, 1122, 1124 (defamation, tortious interference with contractual relationships, abuse of process, barratry); *Nix v. Sawyer*, 466 A.2d 407, 411 (Del. Super. 1983) (malicious prosecution, abuse of process, *prima facie* tort).

Like the California privilege, the Delaware absolute privilege is not limited to cases in court. It applies equally to statements made during quasi-judicial proceedings before administrative agencies. It applies, for example, to statements made to the Delaware Department of Labor, the U.S. Equal Employment Opportunity Commission, and the Human Relations Commission. *Carroll v. ABM Janitorial Servs.*, 2013 WL 5230343, at \*5 (D. Del.); *Bove*, 2007 WL 446014, at \*3. And, for the reasons stated above, it plainly applies to AbbVie's statements made during the PTO's quasi-judicial proceedings.

### D.      Gilead fails to plead plausible tort claims.

To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).[7] A complaint's "factual content" must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is not enough to plead facts showing that a claim is "conceivable" or to present "a sheer possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. Facts that are "'merely consistent with' a defendant's liability" are insufficient because they "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id* at 557.

### 1.      Deceptive Trade Practices (Count 5)

Count 5 is pleaded as a violation of a specific Delaware statute, the Deceptive Trade Practices Act. Because California law governs Gilead's tort claims, a Delaware statute cannot apply. As the court held in *Bavarian Nordic A/S v. Acambis*, 486 F. Supp. 2d 354, 366 (D. Del. 2007), a Deceptive Trade Practices Act claim must be dismissed if another state's law applies. *See also Mainstreet Bank v. Nat'l Excavating*, 791 F. Supp. 2d 520, 531 (E.D. Va. 2011).

Even if Delaware law applies, Count 5 should still be dismissed. Count 5 alleges a violation of five subsections of the Deceptive Trade Practices Act: § 2532(a)(2), (3), (5), (8), and (12). But Gilead does not have standing to assert such a claim, and none of the five subsections apply here.

As this Court held in *Joint Stock Society v. UDV N. Am.*, 53 F. Supp. 2d 692, 711 (D. Del. 1999) (Sleet, J.), the Act only "affords standing to those businesses which are competing against each other in the marketplace." *See also Chase Bank USA v. Hess*, 2013 WL 867542, at *5 (D.

---

[7]      It is an open question as to whether the heightened pleading standards of Federal Rule of Civil Procedure 9(b) apply to Gilead' claims. *See, e.g.*, *Wilco AG v. Packaging Technologies & Inspection LLC*, 615 F. Supp. 2d 320, at 325, n.2 (D. Del. 2009); *J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.*, 1988 WL 32012, at *12 (Del. Super.); *Sammons v. Hartford Underwriters Ins. Co.*, 2010 WL 1267222, at *5-6 (Del. Super.). Since Gilead cannot meet the pleading standards of Rule 8, it certainly cannot meet the heightened standards of Rule 9.

- 14 -

Del.) ("manufacture similar products … or direct competitors"). Without real competition based on goods in the marketplace, one business cannot confuse consumers about another's goods.

Gilead and AbbVie are not yet competing in the market for next-generation hepatitis C treatments. Gilead's Complaint alleges that it and AbbVie are merely "the two companies ***most likely to first bring*** an all-oral, interferon free combination therapy ***to market***." (Compl. ¶ 4 (emp. added).) But neither company has such a product on the market. Only on February 10 of this year did Gilead file an NDA. (*Id.* ¶¶ 186-87.) "Consequently, the court cannot conclude that the plaintiffs have a 'reasonable interest' which deserves protection from the defendants' advertising, false or otherwise." *Joint Stock Soc'y*, 53 F. Supp. 2d at 711.

Nor has Gilead pleaded a violation of the Deceptive Trade Practices Act, which is Delaware's enactment of the Uniform Deceptive Trade Practices Act. *Delaware Solid Waste Auth. v. Eastern Shore Envtl.*, 2002 WL 537691, at *4 (Del. Ch.). In the five subsections Gilead asserts, the two Acts are identical. They are directed at "(i) false or misleading use of trademarks or other trade identification and (ii) deceptive advertising." *Id.* Gilead does not allege that AbbVie used misleading trademarks or advertised deceptively, so the entire Count should be dismissed. Analyzing the subsections individually leads to the same conclusion:

- Subsection (2) states that it is a deceptive trade practice to "[c]ause[] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services." This subsection is directed at confusion "caused by trademarks" and the like. Uniform Act § 2(a)(2), cmt. Nothing of the sort is at issue here.

- Subsection (3) states that it is a deceptive trade practice to "cause[] likelihood of confusion as to affiliation, connection, or association with, or certification by, another." This subsection is directed at "misleading trade names." Uniform Act § 2(a)(3), cmt. Again, nothing of the sort is at issue here.

- Subsection (5) states that it is a deceptive trade practice to "represent[] that goods or services have sponsorship, approval, [or] characteristics … that they do not have." This subsection "deals with false advertising." Uniform Act § 2(a)(5), cmt. Gilead does not allege that AbbVie has any advertising, much less false advertising.

- Subsection (8) states that it is a deceptive trade practice to "disparage[] the goods, services, or business of another by false or misleading representation of fact." This subsection is directed solely at "disparagement." Uniform Act § 2(a)(8), cmt. Gilead never alleges that AbbVie disparaged its goods.

- 15 -

- Subsection (12) states that it is a deceptive trade practice to "engage[] in any other conduct which similarly creates a likelihood of confusion or misunderstanding." Gilead's allegations do not establish that AbbVie's conduct is likely to confuse or mislead consumers. At present, the patented invention is not even being sold to consumers.

On these points, the decision in *Delaware Solid* is instructive. Relying on the Uniform Act's commentary, the court dismissed claims under (2) and (3) for failure to allege "the use of a trademark or trade name"; under (5) for failure to "specify any particular advertisement" that is false; and under (12) for trying to use the Act indirectly to enforce a different statute, a county zoning ordinance. 2002 WL 537691, at *4-6; *see also Accenture Global Servs. GMBH v. Guidewire Software*, 581 F. Supp. 2d 654, 668 (D. Del. 2008) (dismissing under (5), (8), and (12) for failure to "allege[] specific facts to make plausible the contention that [the] statements likely caused confusion … in the relevant marketplace"). Here, the statutes that Gilead is improperly seeking to enforce indirectly through (12) are the patent laws.

### 2.      Slander of Title (Count 6)

Slander of title under California law is the publication of a false, non-privileged statement that disparages another's title, causing pecuniary loss. *HIF Bio v. Yung Shin Pharm.*, 600 F.3d 1347, 1355 (Fed. Cir. 2010). A third party must have understood the defendant's statement as casting doubt on the plaintiff's title. *Appel v. Burman*, 206 Cal. Rptr. 259, 262 (Cal. App. 1984). Research revealed only one decision that addresses—and it rejects—the idea that a patent application is slander of title:

> The Plaintiff has alleged that the wrongful filing and recording of patent applications … and the posting of the patents on the US Patent Office's website is sufficient to constitute third party publication. … Plaintiff seems to be saying that the posting of the patents on the website constituted notice to world … and thus disparaged Plaintiffs title. . . . To accept the Plaintiff's position that the posting of the patents, by the patent office, is publication takes the doctrine too far. There is no evidence that [any]one [] saw these patents or tha[t] anyone even looked for them… Mere speculation that someone will see the patents and associate them as disparaging the Plaintiffs title is too speculative…

*ECC Sys. v. Tyco Int'l*, 2007 WL 5861212 (Cal. Super.); *see also Killette v. Pittman*, 1997 WL 657005, at *7 (4th Cir.) (no slander: "[t]here was absolutely no evidence that any third-party, let

alone a potential licensee, was aware" of a copyright claim). AbbVie simply filed and prosecuted patent applications; there is no allegation anyone saw them, at least until Gilead publicized them.

The elements and defects are the same under Delaware law. *Hegedus v. Ross*, 2012 WL 2884792, at *5 (D. Del. 2012). Patent applications simply are not slander of title.

### 3.      Tortious Interference with Prospective Business Relations (Count 7)

To plead a plausible claim for tortious interference under California law, a complaint must plead sufficient facts to establish: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply v. Lockheed Martin*, 63 P.3d 937, 950 (Cal. 2003). Gilead failed to state a claim for three reasons.

First, Gilead fails to adequately allege a prospective economic relationship. To state a claim, Gilead must allege that it already had a relationship with and expected to receive an economic benefit from a *specific* third party. *Logtale v. IKOR*, 2013 WL 4427254, at *6 (N.D. Cal.) ("a specific business relationship"); *Westside Ctr. Assocs. v. Safeway Stores 23*, 42 Cal. App. 4th 507, 526 (1996) (excluding "a relationship which has yet to arise"); *Roth v. Rhodes*, 25 Cal. App. 4th 530, 546 (1994) ("an existing relationship is required"). And that specific relationship must hold "the promise of future economic advantage," not merely "a hope … and a desire." *Google v. American Blind & Wallpaper Factory*, 2005 WL 832398, at *8-9 (N.D. Cal.) (a generic hope of a relationship with "repeat customers" was too speculative).

Gilead does not identify any specific third party with which it had a relationship and expected to receive an economic benefit. Instead, Gilead lists broad, general categories of potential business partners: marketers, distributors, insurers, health care providers. (Compl. ¶¶ 249-53.) Gilead even admits that it **does not have** economic relationships with these potential business partners, but merely hopes to have them in the future. (*Id.* ¶¶ 249, 252.) As the

Complaint concedes, actual relationships must wait until the FDA approves the combination therapy, which has not yet occurred. (*Id.* ¶¶ 249, 187.)

The law in Delaware is the same. To allege tortious interference, "the plaintiff must be able to cite actual or potential contracts," but Gilead "fails to allege an actual or potential contract with any identifiable entity." *Marino v. Cross Country Bank*, 2003 WL 503257, at *4 (D. Del.) (Sleet, J.)*; see also Kimberly-Clark Worldwide v. Cardinal Health 200*, 2012 WL 3063974, at *4 (D. Del.); *Wilco AG*, 615 F. Supp. 2d at 326. Gilead merely "implies a loss of potential future … contracts, [which] is purely speculative and is not sufficient to state a claim." *Marino*, 2003 WL 50327, at *4.

Second, Gilead does not allege that AbbVie disrupted any relationship. Gilead is required to plead facts of "actual disruption," for example "that it lost a contract" or that "a negotiation with a customer failed." *Sybersound Records v. UAV*, 517 F.3d 1137, 1151 (9th Cir. 2008); *Piping Rock v. David Lerner*, 946 F. Supp. 2d 957, 980 (N.D. Cal. 2013) (failure to "identif[y] any specific opportunities … lost"). Having failed to allege a specific relationship, Gilead also cannot plausibly plead that AbbVie disrupted it. Gilead's allegation that companies "may be deterred from doing business with Gilead" in the future (Compl. ¶ 252) is irrelevant.

Third, a plaintiff must plead conduct that is *independently* unlawful, on some ground other than interference. *Korea Supply*, 63 P.3d at 950. Count 7 is premised on the violation alleged in Count 6, so Count 7 likewise fails. *Boon Rawd Trading Int'l v. Paleewong Trading*, 2011 WL 846639, at *7 (N.D. Cal.) (dismissing because underlying tort claims failed).

## III.  REDACTED  (COUNT 8) SHOULD BE DISMISSED.

For two reasons, Count 8 fails to state a claim   REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

## CONCLUSION

For the foregoing reasons, Defendants respectfully urge this Court to strike or dismiss

Gilead's state law claims, Counts 5-8, with prejudice, and award AbbVie its attorneys' fees.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Mary B. Graham

OF COUNSEL:

Michael A. Morin
David P. Frazier
James R. Barney
Casey L. Dwyer
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Nishla Keiser
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Seaport Lane
Boston, MA 02210
(617) 646-1600

James F. Hurst
Samantha Maxfield
Scott Glauberman
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-5600

Charles Klein
WINSTON & STRAWN LLP
1700 K Street NW
Washington, DC 20006
(202) 282-5000

February 18, 2014
8010950

Mary B. Graham (#2256)
Derek J. Fahnestock (#4705)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
dfahnestock@mnat.com
*Attorneys for Abbott Laboratories, Inc.
and AbbVie Inc.*