**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| GILEAD SCIENCES, INC., GILEAD PHARMASSET LLC, and GILEAD SCIENCES LIMITED, <br><br>         Plaintiffs, <br><br>         v. <br><br> ABBOTT LABORATORIES, INC., and ABBVIE, INC., <br><br>         Defendants. | C.A. No. 13-2034-GMS <br><br> **JURY TRIAL DEMANDED** <br><br> ███████████████ <br><br> REDACTED VERSION |

**PLAINTIFFS' BRIEF IN OPPOSITION TO**
**MOTIONS TO DISMISS COUNTS 9-11 AND TO STRIKE COUNTS 9-10**

OF COUNSEL:

Jonathan E. Singer
singer@fr.com
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

Juanita R. Brooks
brooks@fr.com
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Tommy Jacks
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701
Telephone:  (512) 472-5070

Dated:  May 30, 2014

FISH & RICHARDSON P.C.
W. Chad Shear (#5711)
Gregory R. Booker (#4784)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899
Telephone (302) 652-5070
Facsimile (302) 652-0607
shear@fr.com; booker@fr.com

*Attorneys for Plaintiffs*
*Gilead Sciences, Inc., Gilead Pharmasset*
*LLC, and Gilead Sciences Limited*

# TABLE OF CONTENTS

**Page(s)**

I.    SUMMARY OF ARGUMENT AND NATURE AND STAGE OF
      PROCEEDINGS ...................................................................................................1

II.   UNDISPUTED FACTS ........................................................................................2

      A.    The Gilead Compounds And Their Use In The Gilead
            Combination For  Treating HCV GT-1 Are Gilead's Inventions,
            Not Abbott's Or AbbVie's........................................................................2

      B.    REDACTED

                                  ...................................................................4

      C.    Defendants REDACTED
            File Patents to Block the Use of Sofosbuvir in Short-Term
            Therapies .................................................................................................5

III.  ARGUMENT .......................................................................................................8

      A.    Defendants Concede That Gilead's Factual Allegations are True
            for Purposes of This Motion ....................................................................8

      B.    Gilead's Complaint Satisfies *Twombly* For All its State Law
            Claims ......................................................................................................9

            1.    REDACTED
                                                             ................9

            2.    Gilead's Unfair Competition Claim Is Sufficiently Pled............11

            3.    Gilead's Slander of Title Claim is Sufficiently Pled ..................12

      B.    Gilead's State Law Tort Claims Are Not Preempted By Federal
            Patent Law ..............................................................................................13

            1.    REDACTED

                                                             ......................13

            2.    Defendants' Willful Attempt to Deceive the European
                  Patent Office Constitutes Bad-Faith Conduct In The
                  Marketplace.................................................................................15

            3.    The State Law Claims Each Contain Additional
                  Elements Not Found in Patent Law ...........................................15

C.     Gilead's State Law Tort Claims Are Not Barred by *Noerr-Pennington* ...............................................................................17

D.     California's Anti-SLAPP Statute And Litigation Privilege Do Not Protect Illegal Behavior ...................................................18

IV.    CONCLUSION..................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Action Apt. Ass'n v. City of Santa Monica*,
    163 P.3d 89 (Cal. 2007) ...................................................................................19

*Allergan, Inc. v. Athena Cosmetics, Inc.*,
    738 F.3d 1350 (Fed. Cir. 2013)........................................................................16

*Altavion, Inc. v. Konica-Minolta Sys. Lab., Inc.*,
    No. C-07-06358, 2008 U.S. Dist. LEXIS 37768 (N.D. Cal. May 8, 2008)............13

*Ashcroft v. Iqbal*,
    566 U.S. 662 (2009).........................................................................................9

*Bardin v. DaimlerChrysler Corp.*,
    136 Cal. App. 4th 1255 (Cal. App. 2006) ...........................................................11

*Barrinuevo v. Chase Bank, N.A.*,
    885 F. Supp. 2d 964 (N.D. Cal. 2012) ...................................................12, 13, 17

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007)....................................................................................9, 13

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
    168 F.3d 119 (3d Cir. 1999)..............................................................................18

*Coastal States Mktg. Inc. v. Hunt*,
    694 F.2d 1358 (5th Cir. 1983) ...........................................................................15

*Dow Chemical Co. v. Exxon Corp.*,
    139 F.3d 1470 (Fed. Cir. 1998)...................................................................15, 16

*Federal Trade Comm'n v. Superior Court Trial Lawyers Assoc.*,
    493 U.S. 411 (1990).........................................................................................17

*Flatley v. Mauro*,
    139 P.3d 2 (Cal. 2006) .....................................................................................19

*Garcia v. Allstate Ins.*,
    No. 1:12-cv-609, 2012 WL 4210113 (E.D. Cal. Sept. 18, 2012) ..........................19

*Graffiti Protective Coatings, Inc. v. City of Pico Rivera*,
    181 Cal. App. 4th 1207 (Cal. App. 2d Dist. 2010) ...............................................19

*Guessous v. Chrome Hearts, LLC,*
179 Cal. App. 4th 1177 (Cal. App. 2d Dist. 2009) ...............................................15

*Hunter Douglas, Inc. v. Harmonic Design, Inc.,*
153 F.3d 1318 (Fed. Cir. 1998), *overruled on other grounds, Midwest Indus.,*
*Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356 (Fed. Cir. 1999) (en banc)........................13, 16

*Kwikset Corp. v. Superior Court of Orange County,*
246 P.3d 877 (Cal. 2011) ........................................................................12

*Metabolife Int'l, Inc. v. Wornick,*
264 F.3d 832 (9th Cir. 2001) ....................................................................2, 3

*Moran v. Endres,*
135 Cal. App. 4th 952 (Cal. App. 2d Dist. 2006) ...................................................19

*Navellier v. Sletten,*
52 P.3d 703 (Cal. 2002) ..........................................................................19

*Nobelpharma AB v. Implant Innovations, Inc.,*
141 F.3d 1059 (Fed. Cir. 1998)..............................................................17, 18

*Occidental Petroleum Corp. v. Buttes Gas & Oil Co.,*
331 F. Supp. 92 (C.D. Cal. 1971) ................................................................15

*Overstock.com, Inc. v. Gradient Analytics, Inc.,*
151 Cal. App. 4th 688 (Cal. App. 1st Dist. 2007)...................................................19

*People v. Persolve,*
218 Cal. App. 4th 1267 (Cal. App. 5th Dist. 2013) ....................................11, 17, 20

*PepsiCo, Inc. v. Redmond,*
54 F.3d 1262 (7th Cir. 1995) ....................................................................10

*Prof'l Real Estate Investors, Inc. ["PRE"] v. Columbia Pictures Indus., Inc.*
508 U.S. 49 (1993)................................................................................17

*Rambus, Inc. v. Infineon Techs.,*
330 F. Supp. 2d 679 (E.D. Va. 2004) ........................................................11, 13

*Rodime PLC v. Seagate Tech., Inc.,*
174 F.3d 1294 (Fed. Cir. 1999)..............................................................16, 18

*S3 Graphics Co., Ltd. v. ATI Techs. ULC,*
C.A. No. 11-1298-LPS, 2014 U.S. Dist. LEXIS 16928 (D. Del. Feb. 11, 2014) ..............13, 18

*Sony Electronics, Inc. v. Soundview Techs., Inc.,*
157 F. Supp. 180 (D. Conn. 2001)................................................................17

*Swanson v. ALZA Corp.*,
   No. C-12-4579, 2013 U.S. Dist. LEXIS 34326 (N.D. Cal. March 12, 2013) ........................12

*In re Toyota Motor Corp.*,
   790 F. Supp. 2d 1152 (C.D. Cal. 2011) ...............................................................................12

*United States v. Philip Morris USA, Inc.*,
   566 F.3d 1095 (D.C. Cir. 2009) ..........................................................................................17

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
   382 U.S. 172 (1965) ............................................................................................................17

*Zenith Elecs. Corp. v. Elo Touchsystems, Inc.*,
   182 F.3d 1340 (Fed. Cir. 1999) ...........................................................................................16

**Statutes**

18 U.S.C. § 1001 ..........................................................................................................................20

18 U.S.C. § 1001's ........................................................................................................................20

Cal. Civ. Code § 47(b) ..................................................................................................................19

Cal. Civ. Proc. Code § 425.16(b)(1) .............................................................................................19

**Other Authorities**

37 CFR 1.56 ...........................................................................................................................7, 8, 9

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................9

Fed. R. Civ. P. 15(a) ....................................................................................................................20

## I.      SUMMARY OF ARGUMENT AND NATURE AND STAGE OF PROCEEDINGS

On December 6, 2013, the FDA approved Sofosbuvir (PSI-7977), a revolutionary cure

for the deadly disease Hepatitis C ("HCV").   Hailed by both the popular and scientific press,

Sofosbuvir already has radically changed the way doctors treat the disease, through higher cure

rates, vastly shorter treatment durations—as little as 12 weeks—and the first-ever treatment of

certain types of HCV without interferon, an injectable drug that causes debilitating side effects.

Gilead acquired Sofosbuvir when it merged with Pharmasset, the company that invented

the molecule.   Immediately upon acquisition, Gilead set out to combine Sofosbuvir with its own

drug Ledipasvir (GS-5885), to yield a single daily pill, interferon-free therapy, with the objective

of curing HCV in as little as 8 weeks.   Gilead has completed human trials to prove the safety and

efficacy of its 7977/5885 treatment ("the Gilead Combination"),[1] and its new drug application

("NDA") now awaits FDA approval.

REDACTED

Defendants embarked on a scheme to attempt to use the patent system to

achieve through legal machinations what they could not accomplish scientifically or

commercially–namely, acquire for themselves the exclusive right to make, use or sell Gilead's

combination therapy.   Through careful omissions and misrepresentations to the Patent Office,

Defendants succeeded in obtaining four patents that explicitly claim the Gilead Combination as

their intellectual property, despite having never owned nor tested that combination in patients.

This unique set of facts takes this case far outside the range of a traditional "patent case."

That is why, in addition to seeking invalidation of the patents-in-suit, Gilead seeks injunctive

---

[1] PSI-7977 became GS-7977 when Gilead acquired Pharmasset. The generic name for GS-7977
is Sofosbuvir, and for GS-5885 is Ledipasvir.  All of these designations are used herein.

relief and damages under California law, REDACTED

Defendants' various motions opposing these state law counts have no merit, and their assertions that their fraudulent and criminal behavior is protected by the U.S. Constitution or privileged under California law are wrong.   Their motions should be denied.

## II.   UNDISPUTED FACTS

For purposes of this motion, Gilead takes Defendants at their word:   that Gilead's allegations of unlawful, fraudulent and even criminal conduct by Defendants and their employees in the Second Amended Complaint ("SAC") are ***undisputed***.   Normally in the anti-SLAPP context, a plaintiff must come forward with evidence to support its allegations, and defendants in turn must provide discovery.   *See e.g.*, *Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832, 846 (9th Cir. 2001).   But the Defendants in this case, in order to avoid discovery, contend that the Court should take Gilead's allegations as true.   We thus provide a brief summary of some of Gilead's allegations that support Gilead's state law claims and that Defendants studiously ignore.

### A.   The Gilead Compounds And Their Use In The Gilead Combination For Treating HCV GT-1 Are Gilead's Inventions, Not Abbott's Or AbbVie's

The medical treatment at the heart of this case—using the Gilead Combination to treat HCV in as little as 8 weeks—is the invention of Gilead and Pharmasset, not AbbVie and Abbott. SAC ¶ 18.   Gilead invented Ledipasvir, an NS5A inhibitor, while Sofosbuvir, an NS5B polymerase inhibitor, was originally invented by Pharmasset.   *Id.* ¶¶ 5, 42, 73.   Gilead has patents covering each of Ledipasvir and Sofosbuvir.   *Id.* ¶ 17.   While the two drugs work together to treat HCV, Sofosbuvir is the key component.   Alone, among NS5B inhibitors tested in humans, Sofosbuvir is well tolerated in the doses required.   *Id.* ¶ 43.

The origins of the Gilead Combination date back many years.   Already a leader in

treating HIV, Gilead turned its research efforts to treating HCV in the early 2000's.  As this research progressed, Gilead sought to develop interferon and ribavirin-free therapies to treat HCV with so-called DAAs (direct-acting antivirals), of which Sofosbuvir and Ledipasvir are two.  Before Sofosbuvir's approval, a 24 to 48 week interferon/ribavirin regimen (with or without other drugs) was the standard of care for treating HCV.  *Id.* ¶¶ 2, 6, 39.  Unfortunately, both drugs cause serious side effects, with interferon being particularly debilitating.  *Id.* ¶¶ 2, 40.

By at least as early as June 2011, Gilead strongly believed that the combination of Sofosbuvir and Ledipasvir would successfully treat HCV patients.  *Id.* ¶ 77.  Gilead believed this combination would revolutionize HCV treatment, with much shorter treatment durations and no need for interferon or ribavirin.  *Id.*  Accordingly, Gilead decided to acquire Pharmasset to obtain Sofosbuvir and combine it with Ledipasvir.  *Id.* ¶ 78.  While discussions for the acquisition proceeded, Gilead sought to protect its intellectual property rights and significant anticipated financial investment in the combination by filing for patent protection on September 16, 2011.  *Id.* ¶¶ 79-80.  This patent application discloses a method for treating HCV using the Gilead Combination, with and without ribavirin, and without interferon, for as little as 12 weeks.  *Id.*

On November 21, 2011, Gilead and Pharmasset announced the acquisition of Pharmasset by Gilead for approximately $11 billion.  *Id.* ¶ 81.  The stated purpose of the acquisition was to advance Gilead's efforts to develop an all-oral regimen for the treatment of HCV with Pharmasset's "lead product candidate" PSI-7977—*i.e.*, the Gilead Combination.  *Id.* ¶¶ 81-82.

Gilead then spent hundreds of millions of dollars to conduct the clinical trials on the Gilead Combination, which were a resounding success, and proved both 8-week and 12-week interferon and ribavirin-free treatment regimens.  *Id.* ¶¶ 188-89.  Based on this success, Gilead filed its NDA for the Gilead Combination on February 10, 2014, the earliest response date for

which is October 10, 2014.  *Id*. ¶ 188.   Simultaneously, Gilead pursued and received FDA approval for Sofosbuvir as an anti-HCV agent.  *Id*. ¶ 273.   Gilead now markets Sofosbuvir as SOVALDI®, which is indicated to treat certain HCV genotypes with ribavirin and without interferon, for as little as twelve weeks.  *Id*. ¶ 6.   This is the first interferon-free treatment of HCV, thereby sparing patients the devastating side effects of that drug.  *Id*. ¶¶ 2, 6, 39-40.   Since its launch on December 6, 2013, SOVALDI® has been an enormous success.  *Id*. ¶ 6.

**B.**   REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

Consequently, AbbVie's current combination therapy combines four different drugs in multiple pills. *Id.* ¶¶ 11, 92.

> **C.** **Defendants** REDACTED **File Patents to Block the Use of Sofosbuvir in Short-Term Therapies**
> REDACTED

as detailed in Gilead's Complaint, Defendants hatched a scheme to obtain patent rights aimed at blocking anyone from being able to use Sofosbuvir in short-duration therapies of any kind, including in combination with other compounds. *Id.* ¶¶ 107–108.

REDACTED

The key step in this plot was the filing of two U.S. provisional patent applications on October 21, 2011. *Id.* ¶¶ 100–02. These virtually identical applications contain claims covering potentially thousands of combinations of HCV compounds invented not by Abbott, but rather by Abbott's competitors. *Id.* ¶¶ 101, 103. In fact, they recite virtually every DAA in development

by all major Abbott competitors, including all seventy enumerated in Paragraph 101 of Gilead's Second Amended Complaint. *Id.*

On February 17, 2012, Abbott filed two more provisional patent applications. *Id.* at ¶ 114.  REDACTED

These applications astonishingly (and falsely) assert in Claim 34 that Abbott invented the use of the Gilead Combination for treating HCV. *Id.* at ¶ 116.

Abbott then filed still more provisional patent applications on June 6, 2012. *Id.* ¶ 122. These applications purportedly applied a computer model to the Gilead Combination as support for AbbVie's "invention." *Id.* ¶ 125. The model is dependent on data from Pharmasset for its "predicted" performance of the Gilead Combination, and the "model" contributed nothing novel regarding the Gilead Combination or Sofosbuvir. *Id.* ¶¶ 125-127, 129.

In August 2012, the named inventors of the provisional applications executed declarations under the penalty of perjury claiming that they were the original and first inventors of the Gilead Combination. *Id.* at ¶¶ 130, 139, 141. These declarations were false, as the inventors did not invent the Gilead Combination. *Id.* at ¶¶ 134–135, 141–143, 180. The named inventors executed these false declarations at Abbott's direction, within the scope of their employment. *Id.* ¶ 262a.

Throughout prosecution of these patent applications, Defendants claimed Gilead's development as their own and acted with incredible speed so as not to be discovered. For example, the February 17, 2012 provisional applications that first claimed the Gilead Combination came just two weeks *after* Gilead announced its plans to conduct clinical trials on the Combination. *Id.* ¶¶ 86-87, 90, 114. Similarly, two days *after* Gilead first publicly presented

clinical data on the Gilead Combination, AbbVie filed that data with the PTO, claiming they supported predecessor Abbott's "invention" of the Gilead Combination. *Id*. ¶¶ 127, 207 (citing AbbVie's March 6, 2013 Supplemental Response to the PTO).

All of this was done in the secrecy provided by the accelerated examination process permitted at the U.S. Patent Office. *See id*. ¶¶ 14, 150. Not until April 25, 2013, were Abbott's (now AbbVie's) patent applications published by the PTO. *Id*. ¶ 150. But by then it was already too late. Days thereafter, on May 1, 2013, the PTO mailed its notices of allowance for AbbVie's first two patents. *Id*. ¶ 152. On that same day, after learning of the applications, Gilead contacted AbbVie's REDACTED by email, attaching Gilead's patent application that disclosed the Gilead Combination and that is prior art to the AbbVie applications. *Id*. Gilead encouraged REDACTED to comply with 37 CFR 1.56 and disclose the reference to the PTO. *Id*. ¶ 152. Gilead sent a similar communication to REDACTED and to AbbVie's REDACTED REDACTED , the next day. *Id*. ¶¶ 161, 163. Despite the fact that the PTO rules permit and in fact require the submission of material information even after a Notice of Allowance is mailed, no such disclosure was ever made by AbbVie in connection with its '022 and '066 applications. *Id*. ¶¶ 152, 161-65. Instead, AbbVie paid the issue fee for its patents the same day REDACTED received Gilead's letter. *Id*. ¶ 165.

But for Defendants' intentional misrepresentations and failures to disclose material information to the PTO, the claims to the Gilead Combination contained in AbbVie's patents would not have issued. *Id*. ¶¶ 152-79, 205-08, 223-26, 240-41, 255-56, 262(e). While Defendants trumpet their later "disclosure" of the Gilead PCT to the Patent Office in August 2013, burying this reference in another application after patents already have issued is not consistent with the duty of candor and good faith before the PTO—and Defendants know it. *See*

*id.* ¶¶ 165, 177-78.

In addition to its false claims to the PTO, AbbVie has also published its false claims to the Gilead Combination in Europe, in an effort to secure patents there. *Id.* ¶¶ 19, 175. As it did in the United States, AbbVie presented Gilead's clinical trial data on the Gilead Combination to the European Patent Office, only this time asserting that Gilead had "quickly adopted" the invention of the Gilead Combination from AbbVie. *Id.* But Defendants know the opposite is the case–that AbbVie has "adopted" Gilead's (and Pharmasset's) work as its own.

Gilead now seeks relief for the above-described conduct, which violates not only the Patent Act, but REDACTED the business laws of California. And while we turn to Defendants' arguments in support of their motions to dismiss Gilead's state law claims, we note that, despite the exacting pleading standards for inequitable conduct, Defendants do not challenge Gilead's proper pleading of their fraudulent behavior before the U.S. PTO.

## III. ARGUMENT

### A. Defendants Concede That Gilead's Factual Allegations are True for Purposes of This Motion

While Defendants bring a variety of different challenges to Gilead's state law claims, all those challenges rest on Gilead allegedly having failed to meet the pleading standards of the Federal Rules of Civil Procedure. Whether cast as anti-SLAPP, preemption, litigation privilege, *Noerr-Pennington*, or a plain old 12(b)(6) failure to state a claim, each of Defendants' arguments requires the Court to examine Gilead's pleading and determine whether Gilead has pled sufficient facts to support its asserted state law claims. As noted above, on receipt of an anti-SLAPP motion, a plaintiff must normally establish not merely a proper pleading, but must also support with evidence a *prima facie* case showing a likelihood of success. But, in an effort to evade the discovery that would otherwise be required in the anti-SLAPP context, Defendants have conceded for the purposes of this motion that all of the facts alleged in Gilead's Compliant

are true ***and*** that the pleading standard for a Rule 12(b)(6) motion governs all of Defendants' motions, including the anti-SLAPP motion.  Under this standard, Gilead's allegations, taken as true, need only be sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  This means that the Court need find only that the facts alleged in the Complaint, which the Court must accept as true and from which the Court must draw all reasonable inferences in Gilead's favor, are sufficient to show that Gilead has pled a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Twombly*, 550 U.S. at 570.  A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

**B.**     **Gilead's Complaint Satisfies *Twombly* For All its State Law Claims**

**1.**     REDACTED

REDACTED

REDACTED

REDACTED

### 2. Gilead's Unfair Competition Claim Is Sufficiently Pled

The California Unfair Competition Law "borrows" other (non-patent) federal or state laws to establish "unlawful conduct" that violates its provisions. *People v. Persolve*, 218 Cal. App. 4th 1267, 1276-77 (Cal. App. 5th Dist. 2013). The admitted facts here are more than sufficient to establish underlying violations by Defendants of several different patent and non-patent federal and state statutes and common law legal duties, including criminal perjury, slander of title, REDACTED . *See* SAC ¶¶ 130-136 and Counts 9-11. The UCL also prohibits "unfair" business practices which are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1268-69 (Cal. App. 2006). These words precisely describe Defendants' conduct in using REDACTED

a patent strategy aimed at blocking the use of GS-7977 in combination with GS-5885 and other compounds, as well as in falsely claiming inventorship of the Gilead Combination. SAC ¶¶ 98, 107–109, 262(d), 277, 280*; see Rambus, Inc. v. Infineon Techs. AG*, 330 F. Supp. 2d 679, 694 (E.D. Va. 2004).

In tandem with pleading the requisite unlawful, fraudulent or unfair conduct, Gilead has also pled sufficient facts to show that it has standing under the UCL because it has suffered

11

injury in fact and has lost money or property as a result of Defendants' unfair competition. There are "innumerable ways" in which injury from unfair competition may be shown, including "hav[ing] a present or future property interest diminished." *Kwikset Corp. v. Superior Court of Orange County*, 246 P.3d 877, 885–86 (Cal. 2011). And there is no heightened standard for establishing UCL standing at the initial pleading stage, where general factual allegations of injury resulting from Defendants' conduct will suffice. *Id.* at 888.

Under the factual allegations that Defendants have accepted as true, Gilead certainly has had "a present or future property interest diminished," including the value of its ***present*** property interest in the patented and FDA-approved compound Sofosbuvir, which depends heavily on the potential for combining Sofosbuvir with other compounds like GS-5885 in ways that AbbVie's patents are attempting to block, and its ***future*** property interests in the pending NDA and pending patent application for the Gilead Combination. Also, "threats of potential injury" are sufficient to create standing under the UCL at the pleading stage, and the injury itself "need be nothing more than a trifle." *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1162 (C.D. Cal. 2011). *See also Swanson v. ALZA Corp.*, No. C-12-4579, 2013 U.S. Dist. LEXIS 34326, at *15-*17 (N.D. Cal. March 12, 2013) (false declaration of inventorship of a patent is an injury under the UCL to the true inventor).

### 3. Gilead's Slander of Title Claim is Sufficiently Pled

As with its UCL claim, Gilead has sufficiently pled its slander of title of claim. "Slander or disparagement of title occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes the owner thereof some special pecuniary loss or damage." *Barrinuevo v. Chase Bank, N.A.,* 885 F. Supp. 2d 964, 975 (N.D. Cal. 2012). As established by facts pled in Gilead's Complaint, AbbVie's patent claims do not just incorporate ideas taken from Gilead and Pharmasset—they actually assert ownership to a drug

treatment owned and developed by Gilead at great cost, thus directly disparaging and damaging Gilead's title in its property interests, including Gilead's patents to Sofosbuvir and Ledipasvir, its NDA to Sofosbuvir and its pending patent application and NDA to the Gilead Combination. Defendants have conducted this slander both here and abroad, and the market has already taken notice. *See* SAC ¶ 99, Ex. G.  The damages from this unlawful conduct are the same damages supported by Gilead's pleading taken as a whole, as well as the costs, including attorney's fees, of Gilead's ongoing efforts to clear the title to its property. *Barrinuevo*, 885 F. Supp. 2d at 975.

Accordingly, all of Gilead's state law claims meet *Twombly* pleading standards.  We turn now to Defendants' separate arguments on Gilead's California UCL and slander of title claims.

**B.**     **Gilead's State Law Tort Claims Are Not Preempted By Federal Patent Law**

Federal patent law does not preempt state law business tort claims based on a patentee's efforts to assert or enforce patents in the marketplace, where the patentee has acted in bad faith in obtaining or asserting those patents. *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999) (en banc); *S3 Graphics Co., Ltd. v. ATI Techs. ULC*, C.A. No. 11-1298-LPS, 2014 U.S. Dist. LEXIS 16928, at *6–*9 (D. Del. Feb. 11, 2014). Simply put, Gilead's claims do not rest only on Defendants' actions before the PTO.

**1.**      REDACTED

13

REDACTED

Likewise, AbbVie's conduct before the PTO and in its court filings are not the sole **basis** for Gilead's state law claims of unfair competition and slander of title, but they **are** part of the **evidence** demonstrating Defendants' larger scheme to damage Gilead and Defendants' callous disregard for the interests of patients.

Moreover, the market for Gilead's FDA-approved anti-HCV therapy Sofosbuvir (PSI/GS-7977) is already in place (*see* SAC ¶¶ 6, 271–272), and the market for Gilead's therapeutic combination of Sofosbuvir and Ledipasvir (GS-5885) is rapidly forming. *See id* ¶¶ 189, 271–272. The effect of Defendants' wrongful conduct on the worldwide and domestic marketplace is already visible in the form of coverage from influential U.S. analysts identifying the AbbVie patents as a "barrier" to the launch of Gilead's combination therapy. *See* SAC ¶ 99, Ex. G. It is reasonable to infer from the facts alleged that AbbVie **knew and intended** that its patent prosecution and enforcement efforts, both in the United States and in Europe, would generate significant press coverage which in turn might have a negative impact on the domestic and foreign market prospects for Gilead's compounds and for the Gilead Combination. AbbVie amplified the message to the marketplace when it filed its actions against Gilead, alleging not only that Gilead will itself directly infringe AbbVie's patents but also that Gilead will induce others to infringe. *See* SAC ¶ 194. The Federal Circuit has recognized that even **threats** of patent litigation can have a real effect on the market for a competitor's product, and has held that

14

such threats can create liability for state law business torts when they are made in bad faith and based on patents obtained by inequitable conduct or by willful fraud. *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1475-77 (Fed. Cir. 1998). Surely, *actual* enforcement can be no less harmful in the marketplace than threats of action. The Court may reasonably infer that AbbVie's legal attacks may delay Gilead's effort to bring its new therapy to market even if Gilead is ultimately successful in invalidating AbbVie's patents. *See* SAC ¶ 99.

### 2. Defendants' Willful Attempt to Deceive the European Patent Office Constitutes Bad-Faith Conduct In The Marketplace

As also alleged in Gilead's Complaint, Defendants have knowingly and willfully attempted to deceive the European Patent Office ("EPO") by telling that agency that Gilead's published clinical trial data on the PSI-7977 and GS-5885 showed that Gilead had "adopted" AbbVie's invention, when they knew in fact that the opposite was true. SAC ¶¶ 19, 175. Fraud before the EPO is not actionable under U.S. patent law, and thus state law tort claims relating, in part, to that conduct and its potential marketplace effects are not subject to federal preemption.[2]

### 3. The State Law Claims Each Contain Additional Elements Not Found in Patent Law

Gilead's state law claims are not preempted by federal patent law insofar as they combine the necessary showing of bad faith with "entirely different" elements than are required for a

---

[2]   Whether false statements to the EPO are in any sense "privileged" raises different questions that are unrelated to preemption analysis. The Third Circuit has never addressed that issue, while other courts are divided. *Compare, e.g., Occidental Petroleum Corp. v. Buttes Gas & Oil Co.*, 331 F. Supp. 92, 107 (C.D. Cal. 1971) (*Noerr-Pennington* does not apply to petitioning of foreign governments) *with Coastal States Mktg. Inc. v. Hunt*, 694 F.2d 1358 (5th Cir. 1983) (legitimate petition activities toward foreign agencies are protected). *See also Guessous v. Chrome Hearts, LLC*, 179 Cal. App. 4th 1177, 1185-86 (Cal. App. 2d Dist. 2009) (foreign petitioning is not protected under anti-SLAPP statute). But even if *legitimate* overseas activities were immunized, Defendants cannot escape liability for the same reasons discussed in Section III.C below—there is no immunity, and no privilege, where the attempt to influence government action is conducted by *unlawful* means, such as when a petitioner's statements are knowingly and willfully fraudulent.

claim of inequitable conduct before the PTO.  *See Dow Chem.*, 139 F.3d 1470, 1476-77 (tortious

interference claim was not preempted where it alleged bad-faith marketplace assertion of a patent

the patentee knew was invalid because it had been obtained by inequitable conduct); *Hunter-*

*Douglas*, 153 F.3d at 1336-37 (unfair competition claim under California law, based on

defendants' marketplace assertion of patents obtained by inequitable conduct, would not be

preempted to extent plaintiff could show defendant acted in bad faith).  *See also Zenith Elecs.*

*Corp. v. Elo Touchsystems, Inc.*, 182 F.3d 1340, 1343 (Fed. Cir. 1999) (allowing state law unfair

competition claim to proceed if plaintiff could show defendant acted in bad faith in falsely telling

customers that plaintiff's product could not be manufactured without infringing defendant's

patents); *Rodime PLC v. Seagate Tech., Inc.,* 174 F.3d 1294, 1307 (Fed. Cir. 1999) ("unfair"

conduct supporting claim under California Unfair Competition Law included improper attempts

to influence PTO action).  The instant case represents what this Court has called a "clear case" of

bad faith, where Defendants "know" that the patent is invalid, unenforceable, or not infringed,

yet represent[] to the marketplace that a competitor is infringing the patent."  *See Zenith Elecs.*

*Corp. v. Exzec, Inc., 182 F.3d 1340, 1344 (Fed. Cir. 1999).*  That is precisely what AbbVie did

when it falsely represented to the EPO that Gilead had "adopted" the method of the Gilead

Combination from AbbVie.  *See* SAC ¶¶ 19, 175.

While the purpose of federal patent law is to "foster and reward invention," the regulation

of business conduct in the marketplace to maintain orderly contractual relations and to prevent

tortious and unfair conduct has long been an area of concern to state law, which is not preempted

"merely because patents and patent issues" may be implicated.  *Hunter-Douglas*, 153 F.3d at

1333-34; *cf. Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350, 1355 (Fed. Cir. 2013)

(claim under California Unfair Competition Law not preempted by Federal Food, Drug and

Cosmetic Act).   The California Unfair Competition Law's "borrowing" of other (non-patent) federal or state laws to establish "unlawful conduct," as well as its wide-ranging prohibition on "unfair" business practices, is an additional element distinguishing a UCL claim from a claim based on federal patent law.  *See Persolve*, 218 Cal. App. 4th at 1273.  Likewise, the admitted facts here sufficiently support Gilead's claim for slander of title by establishing the additional elements of a publication to the marketplace that falsely disparages Gilead's property interests in its compounds and therapeutic combinations.  *See Barrinuevo*, 885 F. Supp. 2d at 975.

### C.   Gilead's State Law Tort Claims Are Not Barred by *Noerr-Pennington*

Defendants cannot rely on *Noerr-Pennington* immunity to escape liability for their unlawful and tortious conduct.   Courts applying *Noerr-Pennington* have long held that the doctrine does ***not*** protect "conduct which is otherwise unlawful."   *Sony Electronics, Inc. v. Soundview Techs., Inc.,* 157 F. Supp. 180, 188-89 (D. Conn. 2001); *see Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n*., 493 U.S. 411, 424-25 (1990); *see also United States v. Philip Morris USA, Inc.,* 566 F.3d 1095, 1123-24 (D.C. Cir. 2009) (holding that "the doctrine does not protect deliberately false or misleading statements").

In their Opening Brief, Defendants completely ignore the well-established body of case law under *Walker Process* and its progeny holding that *Noerr-Pennington* does not apply to petitioning activity based on false or misleading statements, instead discussing only the separate exception for "sham" litigation.[3]   *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177-78 (1965); *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1069-70 (Fed. Cir. 1998) (explaining elements of "*Walker Process*" fraud).   The Third

---

[3]   The "sham litigation" exception set forth in *Prof'l Real Estate Investors, Inc. ["PRE"] v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 61 & n.6 (1993), focuses on the litigant's ***purpose*** in pursuing the action, but presumes that the litigant has behaved lawfully in its ***conduct*** of its action.

Circuit has held that where misrepresentations made in the course of an official proceeding are material and go to the "core" of the litigant's case, *Noerr-Pennington* immunity is precluded. *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 124 (3d Cir. 1999); *see also Rodime*, 174 F.3d at 1307 ("*Noerr–Pennington* does not protect conduct which is otherwise unlawful"). Defendants' knowingly false statements that they invented the use of GS-7977 and the Gilead Combination to treat HCV, REDACTED

, go directly to the core of their patent claims, and accordingly their conduct in obtaining those patents and asserting those claims is not protected by *Noerr-Pennington* immunity.

In the patent context, "knowing and willful fraud" in the procurement of the patent also precludes the application of *Noerr-Pennington* immunity. *Nobelpharma*, 141 F.3d at 1069-70. Judge Stark in *S3 Graphics* reached a similar conclusion when he declined to dismiss state-law claims for unfair competition and slander of title relating to the defendant's fraudulent assertion of patents it did not actually own.  2014 U.S. Dist. LEXIS 16928, at *6-*9 (plaintiff properly stated claim that defendant acted in bad faith in recording false assignments of ownership with PTO and falsely asserting ownership of patents in the marketplace).  Gilead's Complaint sufficiently pleads the elements of fraud on the PTO, by alleging that the Defendants made knowingly false representations and omissions of material facts with the intent of deceiving the PTO examiner, and that the examiner relied on those misrepresentations and omissions in allowing AbbVie's claims, with resulting injury to Gilead.  Indeed, as noted above, Defendants do ***not*** argue that Gilead has failed to plead properly inequitable conduct.

> ### D.    California's Anti-SLAPP Statute And Litigation Privilege Do Not Protect Illegal Behavior

Defendants' efforts to hide behind California's anti-SLAPP statute and litigation

privilege are equally unavailing[4]  Perjury, fraud, and unlawful conduct are not acts in furtherance

of First Amendment rights, and they are not protected under the "First Prong" of the anti-SLAPP

inquiry.[5]   *See Flatley v. Mauro,* 139 P.3d 2, 13 (Cal. 2006) (extortion); *Paul for Council v.*

*Hanyecz*, 85 Cal. App. 4th 1356, 1365 (Cal. App. 2d Dist. 2001), *overruled on other grounds by*

*Equilon Enters. V. Consumer Cause, Inc.*, 52 P.3d 685, 694 n.5 (Cal. 2002) (illegal campaign

contributions); *Graffiti Protective Coatings, Inc. v. City of Pico Rivera*, 181 Cal. App. 4th 1207,

1215 (Cal. App. 2d Dist. 2010) (violation of competitive bidding laws).  Likewise, the litigation

privilege in Cal. Civ. Code § 47(b) does not provide immunity for criminal conduct.  *Action*

*Apartment Ass'n, Inc. v. City of Santa Monica*, 163 P.3d 89, 98 (Cal. 2007) (perjury, subornation

of perjury).   Here, as in *Paul for Council*, the Defendants "have effectively conceded" for

purposes of this motion "the illegal nature of [the] activities for which they claim constitutional

protection."  *See* 85 Cal. App. 4th at 1367.  Accordingly, they cannot show that their activities

---

[4]  Defendants improperly suggest on pp. 14 and 20 of their Opening Brief that they are entitled to attorney's fees under the anti-SLAPP statute if Gilead's California law claims (Counts 9 and 10) are dismissed for **any** reason.  This is incorrect.  Defendants can succeed on their anti-SLAPP motion only if they show **both** that their conduct was protected petitioning activity (Prong One) **and** that Gilead has failed to establish a minimal likelihood of success on the merits (Prong Two).  Cal. Civ. Proc. Code § 425.16(b)(1); *see Navellier v. Sletten,* 52 P.3d 703, 712 (Cal. 2002).  Defendants can point to no case law suggesting they could recover fees under the anti-SLAPP statute if these claims are dismissed on grounds unrelated to the statute itself.  Furthermore, Gilead's previous amendment does not entitle Defendants to fees.  *See, e.g.*, *Garcia v. Allstate Ins.*, No. 1:12-cv-609, 2012 WL 4210113, at *12-14 (E.D. Cal. Sept. 18, 2012) (holding attorney's fees unavailable where anti-SLAPP motion would not stand against amended complaint); *Moran v. Endres*, 135 Cal. App. 4th 952, 956 (Cal. App. 2d Dist. 2006) ("[W]hen a defendant cannot in any realistic sense be said to have been successful [on an anti-SLAPP motion], fees need not be awarded.").

[5]  Even if Defendants were successful in establishing that their conduct was protected petitioning activity under Prong One of the anti-SLAPP analysis, their motion would still fail on Prong Two because—based on facts Defendants have accepted as true—Gilead has easily met the low standard for establishing a reasonable probability of success on the merits.  *See* 52 P.3d at 712 (only "minimal merit" is required to survive anti-SLAPP motion); *Overstock.com, Inc. v. Gradient Analytics, Inc.,* 151 Cal. App. 4th 688, 699 (Cal. App. 1st Dist. 2007) ("[T]he plaintiff's burden of establishing a probability of prevailing is not high.").

are protected under the anti-SLAPP statute.  *See id.*

In this case, the facts pled by Gilead and taken as true for purposes of this motion are sufficient to establish that AbbVie's inventors violated the federal criminal statute 18 U.S.C. § 1001 when they submitted sworn declarations falsely affirming that they had invented the Gilead Combination.  SAC ¶¶ 114–117, 130–136, 262(a).  In the context of a claim under California's Unfair Competition Law, which "borrows" violations of other state or federal statutes to create a cause of action for "unlawful" business conduct, California courts have held that the litigation privilege does not apply where the underlying statute is more specific than the privilege and application of the privilege would frustrate that statute's purpose.  *Persolve*, 218 Cal. App. 4th at 1276-77.  18 U.S.C. § 1001's prohibition on false statements is more specific than the California litigation privilege, and application of that privilege to excuse Defendants' conduct would frustrate the federal statute's purpose.  Here, Defendants ***have*** conceded, for purposes of this Motion, facts that evidence illegal conduct under 18 U.S.C. § 1001, including the following:

- The combination therapy claimed in AbbVie's applications and patents is the invention of Gilead and Pharmasset, not Abbott.  Abbott's knowledge derived from REDACTED public disclosures by Gilead.  SAC ¶¶ 25, 45-46, 102, 107-108, 116-117, 135, 143, 262(c), 280, 284.
- The so-called "inventors" in the Abbott provisional applications knew that they were not, in fact, the original and first inventors of this combination.  *Id.* ¶¶ 115-117, 130-136, 180-181, 262(a)-(b), 284.
- Abbott knowingly failed to disclose Gilead's PCT application to the PTO for Application Nos. '022 and '066.  *Id.* ¶¶ 152, 162, 165, 171, 208, 226, 241, 256, 262(d).

## IV.    CONCLUSION

For all the foregoing reasons, Defendants' Motion to Strike and Motion to Dismiss should be denied.  Alternatively, if the Court were to hold Gilead's pleading insufficient in any respect, Gilead should be allowed the opportunity to amend its pleadings to cure any defects under Fed. R. Civ. P. 15(a).

Dated:  May 30, 2014    FISH & RICHARDSON P.C.


By: */s/ Gregory R. Booker*   
   W. Chad Shear (#5711)
   Gregory R. Booker (#4784)
   222 Delaware Avenue, 17th Floor
   P.O. Box 1114
   Wilmington, DE 19899
   Telephone (302) 652-5070
   Facsimile (302) 652-0607
   shear@fr.com; booker@fr.com

   Jonathan E. Singer
   singer@fr.com
   FISH & RICHARDSON P.C.
   60 South Sixth Street, Suite 3200
   Minneapolis, MN 55402
   Telephone: (612) 335-5070
   Facsimile: (612) 288-9696

   Juanita R. Brooks
   brooks@fr.com
   FISH & RICHARDSON P.C.
   12390 El Camino Real
   San Diego, CA 92130
   Telephone: (858) 678-5070
   Facsimile: (858) 678-5099

   Tommy Jacks
   One Congress Plaza, Suite 810
   111 Congress Avenue
   Austin, TX 78701
   Telephone:  (512) 472-5070

   *Attorneys for Plaintiffs*
   *Gilead Sciences, Inc., Gilead Pharmasset LLC, and*
   *Gilead Sciences Limited*