IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GILEAD SCIENCES, INC., GILEAD )
PHARMASSET LLC, and GILEAD SCIENCES )
LIMITED, )
)
Plaintiffs, )
) Civil Action No. 13-2034-GMS
v. )
)
ABBOTT LABORATORIES, INC. )
and ABBVIE, INC., )
)
Defendants. )

## MEMORANDUM

### I. INTRODUCTION

Plaintiffs Gilead Sciences, Inc., Gilead Pharmasset LLC, and Gilead Sciences Limited

(collectively, "Gilead") brought this patent infringement suit against defendants Abbott

Laboratories, Inc. and AbbVie, Inc. (collectively, "AbbVie"[1]) on December 18, 2013, alleging that

AbbVie falsely and knowingly represented to the U.S. Patent and Trademark Office ("PTO") that

it invented highly valuable methods of treating the hepatitis C virus ("HCV") that were invented

by Gilead and its predecessor Pharmasset, Inc. and others. (D.I. 2, ¶ 1.) On March 14, 2014,

Gilead filed a First Amended Complaint. (D.I. 25.) Three weeks later, Gilead filed a Second

Amended Complaint. (D.I. 31.) Gilead asserts three state law claims in Counts 9–11 of its Second

---

[1] On January 1, 2013, Abbott Laboratories, Inc. ("Abbott") separated into two companies: Abbott and AbbVie. (D.I. 31, ¶ 25.) Abbott was dismissed from this action, by stipulation, on March 11, 2015. (D.I. 84.) The parties agreed that any of Abbott's potential liability prior to the creation of AbbVie would be assumed by AbbVie as if it was Abbott. (See D.I. 70 at 18:12–15.) The court will, at times, refer to Abbott in discussing background facts during the period of time before AbbVie and Abbott became two distinct entities.

Amended Complaint at issue for purposes of this Order: (1) violation of Cal. Bus. & Prof § 17200 of the California Unfair Competition Law ("UCL"); (2) slander of title; and, (3) breach of contract under Illinois law. (*Id.*, ¶¶ 266–85.) AbbVie then filed the present Motion to Strike under California's Anti-SLAPP statute (D.I. 35) and Motion to Dismiss for Failure to State a Claim on March 22, 2014. (D.I. 36.)[2] For the reasons that follow, the court grants AbbVie's motion to strike and denies-in-part AbbVie's motion to dismiss.

## II.  BACKGROUND

This lawsuit arises out of the parties' effort to pursue a novel therapy for the treatment of HCV. (D.I. 31, ¶ 1–4.) The invention in dispute is a therapy using the drugs Sofosbuvir (PSI-7977) and Ledipasvir (GS-5885) in combination, to treat HCV patients with an interferon-free regimen, with and without ribavirin, in as short as twelve weeks.[3] (*Id.*, ¶ 16.) The key component of the Combination is PSI-7977. Pharmasset developed PSI-7977. (*Id.*, ¶ 45.)

On February 12, 2009, Pharmasset and Abbott entered into a Bilateral Confidential Disclosure Agreement ("BCDA") allowing the two companies to exchange confidential information about their respective anti-HCV compounds. (*Id.*, ¶ 56.) The BCDA permitted the use of Pharmasset's confidential information for the sole purpose of evaluating their interest in a further business arrangement. (*Id.*, ¶ 57.) The confidentiality agreement was to last seven years. (*Id.*, ¶ 58.) On October 28, 2010, the BCDA was extended for a period of twenty years. (*Id.*, ¶ 60.)

---

[2] Identical Motions were filed in related civil action numbers 14-cv-209-GMS and 14-cv-379-GMS. These cases were consolidated by stipulation on June 5, 2014. (13-cv-2034-GMS, D.I. 43.)

[3] Hereinafter, the invention will be referred to as "the Combination."

Pharmasset and Abbott exchanged confidential information regarding PSI-7977 during negotiations. (*Id.* at ¶ 61.) For example, during a meeting on July 31, 2009, Pharmasset: (1) informed Abbott that it expected sufficient toxicity data to support twelve-week treatment duration for its compounds—including PSI-7977—by mid-2010; and, (2) disclosed toxicity results of PSI-7977's derivative: PSI-7851. (*Id.*, ¶ 63.) Next, Pharmasset granted Abbott access to an online "Data Room" from October 20 to November 11, 2009. (*Id.*, ¶ 68.) Abbott employees—including Drs. Bernstein, Podsadecki, Menon, Klein, and Awni—downloaded confidential Pharmasset documents, namely:

- Internal reports of lab studies testing of PSI-7851 in combination with interferon and/or ribavirin.

- Internal reports of lab studies testing PSI-7851 in combination with various other nucleoside inhibitors, nucleotide inhibitors, protease inhibitors, and an NS4A inhibitor, which concluded PSI-7851 has additive and synergistic effects when combined with these other compounds.

- In vitro and in vivo comparisons of PSI-7851 with other Pharmasset compounds.

- The chemical structure of PSI-7851 and several other Pharmasset compounds.

- Information about the derivation of PSI-7977 from PSI-7851; the chemical structure, metabolic pathways, and toxicity assays of both compounds, and the finding that PSI-7977 is the most active against HCV.

- The protocol for a study comparing relative bioavailability of PSI-7851 and PSI-7977 in both capsule and tablet form.

- Pharmasset's plans to use PSI-7977 in a twelve-week study.

(*Id.*, ¶ 69(a)–(g).)

On November 1, 2010, Pharmasset and Abbott exchanged their final confidential information at a conference in Boston. (*Id.*, ¶ 70.) During this meeting, Pharmasset showed Abbott

a slide deck discussing: (1) the status of PSI-7977 clinical trials; (2) Pharmasset's plans to test an interferon-free combination of PSI-7977 and a nucleotide polymerase inhibitor (PSI-938) in mid-2011; and (3) Pharmasset's plans to test PSI-7977 in a twelve-week treatment regimen. (*Id.*) Negotiations between Pharmasset and Abbott ended after this meeting. (*Id.*, ¶ 71.) Abbott continued in its pursuit of a twelve-week interferon-free anti-HCV therapy. (*See e.g., id.*, ¶ 91.)

In June 2011, believing its proprietary compound GS-5885 would successfully treat HCV when combined with Pharmasset's PSI-7977, Gilead's management recommended the acquisition of Pharmasset to its Board of Directors. (*Id.*, ¶ 78.) On November 21, 2011, Gilead announced the acquisition of Pharmasset. (*Id.*, ¶ 82.) Gilead completed its acquisition of Pharmasset—including PSI-7977—on January 17, 2012. (*Id.*, ¶ 9.) As a result, Gilead is a party to the BCDA. (*Id.*, ¶ 280.)

Beginning in fall of 2011, Abbott began to file provisional patent applications claiming various aspects of the Combination. (*Id.*, ¶ 100.) On February 17, 2012, Abbott filed a provisional patent application ('276/'468) titled "Methods for Treating HCV." (*Id.*, ¶ 114.) Six individuals, whom Gilead alleges were "heavily involved" with Abbott's efforts to acquire Pharmasset, were among the named inventors: Drs. Bernstein, Brun, Menon, Klein, Awni, and Podsadecki. (*Id.*, ¶ 115.) The application claimed, *inter alia*, the method of treating HCV using the combination of PSI-7977 and GS-5885. (*Id.*, ¶ 116.) The application provided no actual clinical data support but, rather, relied on a predictive "mechanistic model" to determine the sustained virological responses of certain direct acting antiviral agent ("DAA") combination therapies. (*Id.*, ¶ 118.) Gilead argues AbbVie breached the contract by using Pharmasset's confidential information to support the predictive "mechanistic model." In August 2012, the eleven named inventors of the AbbVie

provisional patent application signed declarations affirming that they were the true inventors of the disclosed subject matter in the patent applications. (*Id.*, ¶¶ 130–36.)

Subsequently, on May 1, 2013, the PTO issued notice of allowance for AbbVie's first two patent applications—Patent Nos. 8,466,159 (the "'159 patent") and 8,492,386 (the "'386 patent"). (*Id.*, ¶ 150.) Later that day, after it learned of the issued patents, Gilead made contact with AbbVie regarding its previously filed Patent Cooperation Treaty ("PCT") Publication disclosing the Combination, which it believes is prior art relevant to the AbbVie patents. (*Id.*, ¶ 150–64.) Gilead urged AbbVie to disclose the alleged prior art to the PTO, but this was not done until August 2013—after the '159 and '386 patents were issued. (*Id.*, ¶ 176.) Gilead asserts this amounts to inequitable conduct before the PTO.

On December 9, 2013, the European Patent Office rejected AbbVie's pending patent applications for the Combination, *inter alia*, in light of the prior art. (*Id.*, ¶ 168.) On February 10, 2014, Gilead filed a New Drug Application with the FDA for the Combination. (*Id.*, ¶ 188.)

## III. STANDARDS OF REVIEW

### A. Motion to Strike

California's anti-SLAPP statute, Cal. Civ. Proc. Code. § 425.16, was passed in order "to allow court to promptly expose and dismiss meritless and harassing claims seeking to chill protected expression." *Davis v. Electronic Arts Inc.*, 775 F.3d 1172, 1176 (9th Cir. 2015). An anti-SLAPP motion requires a two-step analysis. *See Mindys Cosmetic, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010). First, the moving party is required to show that the conduct underlying the plaintiff's cause of action is an act arising from the defendant's constitutional rights of free speech or petition, and therefore protected. Civ. Proc. Code § 425.16(b)(1); *see Midland Pac.*

*Bldg. Corp. v. King*, 68 Cal. Rptr. 3d 499, 505 (Ct. App. 2007) ("The focus [at step one] is not the form of plaintiff's cause of action, but the defendant's activity that gives rise to the asserted liability.") Second, if the defendant is successful at step one, the burden shifts to the plaintiff to show there is a probability it will prevail on its claim. § 425.16(b)(1). Differing standards of review apply in federal court. *See Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006) ("Special procedural rules apply where an anti-SLAPP motion is brought in federal court.") Because the anti-SLAPP motion is based on legal deficiencies in the complaint, the court must "determine the motion in a manner that complies with the standards set by Federal Rules of Civil Procedure 8 and 12." *Id.*; (D.I. 38 at 7.)[4]

There are four exemptions to California's anti-SLAPP statute: one judicially created exemption, and three statutory.[5] The relevant exemption to the instant action holds that conduct deemed "illegal as a matter of law" is not protected activity under the Constitution, and therefore, is not protected at step one of the anti-SLAPP analysis. In *Flatley v. Mauro*, 139 P.3d 2, 15 (Cal. 2006) the California Supreme Court held:

---

[4] On June 30, 2014, Gilead moved for leave to file a surreply under District of Delaware Local Rule 7.1.2(b), alleging AbbVie changed positions on what it had conceded in its opening brief. (D.I. 49.) The dispute arises from a footnote in AbbVie's opening brief where it stated: "Just for a typical Rule 12 motion, AbbVie accepts Gilead's allegation as true for purposes of this combined anti-SLAPP/Rule 12 motion, making discovery unnecessary and irrelevant." (D.I. 38 at 7 n.4.) Gilead argues, "for the purpose of the pending motions, AbbVie has conceded the illegality of its conduct," and therefore, AbbVie's arguments in support of the motions to strike/dismiss are rendered moot. (D.I. 49 at 1.)

The court denies Gilead's motion for leave to file a surreply (D.I. 49) and rejects Gilead's argument regarding AbbVie's apparent admission to illegal conduct. The relevant footnote can reasonably be read as simply AbbVie's restatement of the standard of review for a motion to dismiss. "[C]ourts separate the factual and legal elements of a claim, accepting all of the complaint's well-pleaded facts as true, but disregarding any legal conclusions." *S3 Graphics Co., Ltd. v. ATO Techs*, C.A. No. 11-1298-LPS, 2014 WL 573358, at *2 (D. Del. Feb. 11, 2014) (internal quotation marks and alterations omitted). AbbVie merely restated this standard.

[5] The statutory exemptions pertain to: (1) public enforcement actions; (2) actions filed solely in the public interest; and, (3) actions involving certain commercial speech. Civ. Proc. Code § 425.16(d); § 425.17(b), (c). None of the statutory exemptions apply to AbbVie's motion, nor are they raised by either of the parties.

6

> [W]here a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action arises from activity by the defendant in furtherance of the defendant's exercise of protected speech or petition rights, but *either the defendant concedes, or the evidence conclusively establishes*, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action. In reaching this conclusion, we emphasize that the question of whether the defendant's underlying conduct was illegal as a matter of law is preliminary, and unrelated to the second prong question of whether the plaintiff has demonstrated a probability of prevailing, and the showing required to establish conduct illegal as a matter of law—either through defendant's concession or by uncontroverted and conclusive evidence—is not the same showing as the plaintiff's second prong showing of probability of prevailing.

(emphasis added).

California courts have interpreted *Flatley* to mean exclusively criminal conduct and not a mere violation of a civil statute or common-law standard of conduct. *See Cross v. Cooper*, 127 Cal. Rptr. 3d 903, 928 (Ct. App. 2011) ("[W]e decline to give plaintiffs a tool for avoiding the application of the anti-SLAPP statute merely by showing any statutory violation.") Therefore, if a court finds that the defendant's conduct underlying the plaintiff's claim violated a criminal statute, as a matter of law, the anti-SLAPP motion should be dismissed.

## B.    Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal where the plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of*

*Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The issue for the court is "not whether the plaintiff

will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). As such, the touchstone of the pleading standard is

plausibility. *Bistrian v. Levi*, 696 F.3d 352 365 (3d Cir. 2012). Plaintiffs must provide sufficient

factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim

for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim is facially

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

It is important for the court to differentiate between those allegations in the complaint that

are factual and those that are "bald assertions" or "unsupported conclusions and unwarranted

inferences." *S3 Graphics*, 2014 WL 573358, at *2 (citing *Morse v. Lower Merion Sch. Dist.*, 132

F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc., v. Pa. Power & Light Co.*, 113 F.3d

405, 417 (3d Cir. 1997)). Ultimately, the complaint must state enough facts to "raise a reasonable

expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim.

*Brinkmeier v. Graco Children's Prods. Inc.*, 767 F. Supp. 2d 488, 492 (D. Del. 2011) (citing

*Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008)).

## IV. DISCUSSION

### A. COUNTS 9 AND 10

#### 1. Motion to Strike

In opposition to AbbVie's anti-SLAPP motion, Gilead argues that Counts 9 and 10 are premised on AbbVie's criminal activity, and therefore the motion must be dismissed. (D.I. 42 at 18–20.) Gilead specifically argues AbbVie's inventors violated 18 U.S.C. § 1001 "when they submitted sworn declarations falsely affirming that they had invented the . . . Combination." (*Id.* at 20.) Gilead refers to the August 2012 declarations signed by each of the eleven named inventors on the AbbVie patent claiming the Combination. (D.I. 31, ¶ 130–36.)

##### a. Preliminary Illegal Activity Inquiry

Section 1001 makes it illegal to "knowingly and willfully" make false statements to any of the three branches of government. To establish a violation of § 1001, the government must prove each of the following five elements: (1) that AbbVie made a statement or representation; (2) that the statement or representation was false; (3) that the false statement was made knowingly and willfully; (4) that the statement or representation was material; and (5) that the statement or representation was made in a matter within the jurisdiction of the federal government. *See United States v. Moyer*, 674 F.3d 192, 213 (3d Cir. 2012). Therefore, in order to violate § 1001, the violator must have acted with an explicit intent to make a false statement.

Thus, as directed by *Flatley*, the court must determine whether AbbVie conceded to have knowingly and willfully submitted false declarations to the PTO or if the evidence conclusively established AbbVie knew the inventors were not the true inventors of the Combination and thus knowingly and willfully submitted false declarations to the PTO.

First, AbbVie has not conceded the legal conclusions asserted in the Second Amended Complaint.[6] *See Crowe v. Gogineni*, No. 2:11-cv-3438 JAM DAD PS, 2012 WL 6203124, at *7– 8 (E.D. Cal. Dec. 12, 2012) *adopted* 2013 WL 1499429 (E.D. Cal. April 11, 2013) (holding defendant had not conceded fraud when bringing anti-SLAPP motion under 12(b)(6) standard of review). Second, the evidence does not conclusively show the inventors knew they were not the true inventors of the Combination.

Gilead alleges a number of the inventors were privy to information about Pharmasset's intentions to develop the Combination, and therefore the inventors knew when they signed declarations they were not the true inventors. (D.I. 31, ¶¶ 130–36.) These are merely allegations. At this stage of the proceedings, a finding that the inventors "knowingly and willfully" submitted false declarations is premature. Discovery is ongoing and, as such, the evidentiary record is virtually nonexistent on the question of whether the inventors knowingly and willfully submitted false declarations. Rather, the court is only privy to allegations that are insufficient to show AbbVie acted illegal "as a matter of law."

Moreover, Gilead's allegations concerning what the inventors may have known has broad implications for the patent invalidity analysis—*i.e.*, inventorship—and any possible inequitable conduct that occurred before the PTO. As a result, the court determines that AbbVie has not consented to, nor does the evidentiary record conclusively show, that the signed declarations are illegal under § 1001 as a matter of law. Accordingly, the court will proceed with the anti-SLAPP analysis.

---

[6] *See supra* note 4.

### b. Anti-SLAPP: Step One

Statements made while petitioning government agencies (including the PTO) qualify as protected activity under the anti-SLAPP statute.[7] *See Mindys*, 611 F.3d at 596–97 (finding trademark application with PTO protected); *Ray Charles Found. v. Robinson*, 919 F. Supp. 2d 1054, 1063–64 (C.D. Cal. 2013) (finding copyright termination notices to the U.S. Copyright Office protected). Here, AbbVie's communications—namely the provisional patent applications and declarations to the PTO—which give rise to Gilead's claims, are protected activity under anti-SLAPP. Indeed, Gilead does not address, nor dispute, this determination in briefing. (D.I. 42 at 18–20.) Thus, the court finds AbbVie has met its burden at step one of the anti-SLAPP analysis.

### c. Anti-SLAPP: Step Two

Step Two of the anti-SLAPP analysis requires the court to determine whether there is a probability Gilead will succeed on Counts 9 and 10. Cal Civ. Proc. Code § 425. 16(b)(1). At this stage of the proceedings, where "an anti-SLAPP motion is based on the legal deficiencies in the complaint, a federal court must determine the motion in a manner that complies with the standards set by Federal Rules 8 and 12." *Bulletin Displays*, 448 F. Supp. 2d at 1180; *Verizon Del., Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004); *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999). As such, the court turns to the motion to dismiss analysis.

.

---

[7] Both parties agree that California law governs Gilead's state-law tort claims. (D.I. 36 at 1.)

11

### 2. Motion to Dismiss

#### a. Count 9: Violation of California's UCL

AbbVie asserts that Gilead's UCL claim should be dismissed for two reasons: (1) Gilead has not pled an economic injury, and thus, lacks standing; and (2) none of the three subparts for a section 17200 claim are adequately pled. (D.I. 38 at 14–17; D.I. 48 at 5–7.) In response, Gilead argues it has suffered an injury in fact and has alleged conduct satisfying the elements of the statute. (D.I. 42 at 11–12.)

In order to establish standing to bring a UCL claim, a plaintiff must: "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011) (interpreting Cal. Bus. & Prof. Code § 17204). "Injury in fact" has been interpreted to mean a "prior possession or a vested legal interest in the money or property allegedly lost.' *Walker v. USAA Cas. Ins. Co.*, 474 F..Supp. 2d 1168, 1172 (E.D. Cal. 2007), *aff'd sub nom. Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir. 2009). Indeed, as Gilead notes, "[t]here are an 'innumerable ways' in which injury from unfair competition may be shown, including 'hav[ing] a present or future property interest diminished.'" (D.I. 42 at 12 (citing *Kwikset*, 246 P.3d at 885–86).) As noted by AbbVie, however, an expectant, speculative, or contingent interest is not a vested interest for the purposes of a UCL claim. (D.I. 38 at 15 (citing *Walker*, 474 F. Supp. 2d. at 1173)); *see Chip-Mender, Inc. v. Sherwin-Williams Co.*, No. C 05-3465 PJH, 2006 WL 13058, at *10 (N.D. Cal. Jan. 3, 2006) ("[Plaintiff] must plead both that it suffered an injury in fact and that it lost money or property as a result of unfair competition."). "At the pleading stage, general factual allegations of injury

12

resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Kwikset*, 246 P.3d at 888.

In this case, Gilead has not sufficiently pled an injury in fact for the purposes of a UCL claim. Gilead's complaint explicitly confirms the speculative nature of its economic injury when stating, "Gilead is *likely* to be damaged by Defendants' conduct." (D.I. 31, ¶ 269 (emphasis added).) In its briefing, Gilead argues it has suffered a diminishment in the "value of its *present* property interest in [1] the patented and FDA-approved compound Sofosbuvir, which depends heavily on the potential for combining Sofosbuvir with other compounds like GS-5885 in ways that [AbbVie's] patents are attempting to block, and its *future* property interest in the pending NDA and pending patent application for the . . . Combination." (D.I. 42 at 12.) But the complaint itself does not discuss this injury. (D.I. 31, ¶¶ 266–69.) An "injury in fact" has not been sufficiently pled, and therefore Gilead lacks standing to bring its UCL claim.

### b. Count 10: Slander of Title/Injurious Falsehood

Gilead asserts AbbVie slandered its property interests in (1) its issued patents on the compounds PSI/GS-7977 (Sofosbuvir) and GS-5885 (Ledipasvir); (2) its rights to the FDA approved compound: PSI/GS-7977 (Sofosbuvir); (3) its rights to its pending New Drug Application seeking FDA approval of the Combination for the treatment of, among others, Genotype 1 HCV patient for durations of eight or twelve weeks; and,(4) its pending patent application. (D.I. 31, ¶¶ 270-77; D.I. 42 at 13.) Gilead argues this was done when AbbVie "falsely claim[ed] to have invented methods for the treatment of HCV using the . . . Combination." (D.I. 31, ¶ 277.)

"Under California law, the elements of slander of title are: publication, falsity, absence of privilege, and disparagement of another's title which is relied upon by a third party and which results in pecuniary loss." *HIF Bio v. Yung Shin Pharm.*, 600 F.3d 1347, 1355 (Fed. Cir. 2010); *see also Barrinuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 975 (N.D. Cal. 2012); *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 326 P.3d 253, 260 (Cal. 2014). California requires that a plaintiff bringing a claim of injurious falsehood, "must present evidence showing it suffered some pecuniary loss." *Mann v. Quality Old Time Serv., Inc.*, 15 Cal. Rptr. 3d 215, 226 (Ct. App. 2014). When showing pecuniary loss or damage, a plaintiff "may not rely on a general decline in business arising from the falsehood, and must instead identify particular customers and transactions of which it was deprived as a result of the libel . . . it may not rely on the unsupported allegations in its complaint." *Id.*

The parties dispute two elements of Gilead's slander of title claim: (1) whether AbbVie published the alleged slander and (2) whether Gilead has sufficiently pled a pecuniary loss. AbbVie asserts Gilead's slander of title claim is defective because it is based solely on (1) the publication of AbbVie's patent applications and (2) AbbVie's recently filed lawsuits seeking declaratory judgment of infringement against Gilead (C.A. Nos. 14-209 and 14-379). (D.I. 38 at 17–18.) Here, AbbVie argues patent applications are not publications capable of slander and that its lawsuits are privileged. (*Id.*; D.I. 48 at 7.) Conversely, Gilead asserts AbbVie has "conducted this slander both here and abroad, and the market has already taken notice." (D.I. 42 at 13.) Gilead does not explicitly state where the publication occurred, but rather only that AbbVie has falsely claimed to have invented the invention, and thus, slander is evident. (*See id.*; D.I. 31, ¶ 277.)

Even if the court were to find AbbVie's patent application constituted a publication and allowed the slander of title analysis to push forward, the court concludes Gilead has not alleged a pecuniary loss. Allegations of pecuniary loss cannot be speculative. *See SB Diversified Prods., Inc. v. Murchison*, No. 12CV2328 JAH MDD, 2014 WL 3894353, at *9 (S.D. Cal. July 28, 2014) (granting motion to dismiss trade libel suit because plaintiff "does nothing more than declare that defendant's purported statements caused it 'pecuniary harm' through 'loss of sales'"); *Stamas v. Cnty. of Madera*, 795 F. Supp. 2d 1047, 1069 (E.D. Cal. 2011) ("To establish liability for slander of title the owner of the property interest must suffer an economic loss as the direct result of the slanderous publication."); *Mann*, 15 Cal. Rptr. 3d at 226.

Here, Gilead merely states pecuniary loss will occur because it "has suffered and will continue to suffer special pecuniary loss and damage as a result of . . . AbbVie's said knowing and willful acts and omissions, including but not limited to the fees, costs and other expenses incurred in bringing the action to clear the cloud on Gilead's property interest." (D.I. 31, ¶ 277.) Gilead's claim for pecuniary loss is conclusory and speculative. While Gilead undoubtedly has an interest in the two separate compounds that make up the Combination (Sofosbuvir and Ledipasvir), it has not alleged any loss that will result to its currently held patents and FDA approval for their use. Rather, the only possible harm is to Gilead's New Drug Application pending before the FDA for the Combination. (*See id.*, ¶ 271.) But this is a "pending" interest and is therefore merely speculative. It is possible—no matter how remote Gilead thinks it is—that the NDA for the Combination is ultimately not approved. In essence, Gilead is asking the court to find it has a current interest in the Combination, and thus, is being harmed. The court rejects this request. The

court grants AbbVie's motion to dismiss Count 10 because Gilead has not sufficiently alleged pecuniary loss as a result of the slander.[8]

## B.    COUNT 11

AbbVie submits four arguments for why Gilead's breach of contract claim fails to state a claim.  (D.I. 38 at 19–20; D.I. 48 at 9–10.)  First, AbbVie argues the complaint lacks factual allegations of how or when AbbVie misused the information obtained under the BCDA.  (D.I. 38 at 19.)  Second, AbbVie argues that because the chemical structure and formulation of PSI-7977 was made public prior to AbbVie's first provisional patent application in October 2011, the information was no longer confidential.  (*Id.*)  Third, AbbVie argues that because Gilead has not obtained FDA approval for the Combination, and because AbbVie does not sell the Combination, the complaint does not plead plausible damages.  (*Id.*)  Fourth, AbbVie argues that because Pharmasset's confidential disclosure related exclusively to PSI-7977, and because AbbVie is not alleged to be making, selling or asserting patents against Gilead for its sale of PSI-7977, Gilead's theory is irrelevant.  (D.I. 48 at 10.)

In response, Gilead relies on trade secret law and the Seventh Circuit's inevitable disclosure theory.[9]  (D.I. 42 at 9–10.)  Here, Gilead asserts that, because a number of the named inventors on the AbbVie patents were privy to Pharmasset's confidential information, this information was inevitably used for a reason other than weighing whether to acquire Pharmasset.  (*Id.* at 10.)  Gilead admits, "[t]he specific facts about exactly what Abbott did with the confidential

---

[8] Because the court is satisfied Counts 9 and 10 should be dismissed on grounds already discussed it is unnecessary to analyze AbbVie's secondary arguments related to legal defenses.  (*See* D.I. 38 at 8–14.)

[9] Seventh Circuit precedent holds the inevitable disclosure theory is a valid theory available under the Illinois' Trade Secret Act.  *See, e.g., PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995).

information it received from Pharmasset are uniquely within Defendants' possession and will be revealed in the course of discovery." (*Id.* at 9.)

Gilead asserts the BCDA was inevitably breached because "[w]ithout the head start provided by Pharmasset's confidential information, it is a reasonable inference that Defendants either would not have been able to file patent applications asserting claims to PSI-7977 and its therapeutic combination or would have filed those applications much later than they did." (D.I. 42 at 10.) Gilead also appears to assert that because many of the named inventors on the AbbVie provisional patent application were privy to the confidential information exchanges from October 20 to November 11, 2009, it was inevitable that they utilized this information. (D.I. 31, ¶¶ 283–84.)

Gilead's reliance on the inevitability of disclosure theory to show a breach of contract is misplaced. As AbbVie correctly notes, *PepsiCo* interpreted the Illinois Trade Secret Act's provision allowing "threatened" misappropriation to be enjoined. (D.I. 48 at 10.) Gilead's complaint does not allege misappropriation of a trade secret but simply alleges breach of the contract. Indeed, Gilead cites no case law finding a company bound by a nondisclosure agreement to have inevitably disclosed confidential information. But this does not mean Gilead's Second Amended Complaint has failed to state a plausible claim for breach of contract. Gilead unnecessarily attempts to fit the facts of the case into the inevitable disclosure theory. Rather, Gilead can simply rely on *Twombly* and *Iqbal* to survive AbbVie's motion to dismiss. The court must determine whether a breach can plausibly be inferred from (1) the disclosures made by Pharmasset to Abbott from October 20 to November 11, 2009; and (2) the use the predictive "mechanistic model" in the February 17, 2012 provisional patent application.

Gilead asserts Abbott's knowledge of the pharmacokinetics metabolic pathway, *in vitro* lab results, animal toxicity results, and optimal dosing methods of PSI-7977 were necessary prerequisites to creating the predictive "mechanistic model." (D.I. 42 at 10.) Importantly, in AbbVie's Feb 17, 2012 provisional patent application, no data was offered in support of its claim, but rather it relied on predictions for the Combination's efficacy based on a "mechanistic model."

AbbVie argues that because the chemical structure of PSI-7977 was publicly disclosed in in the Journal of Medical Chemistry sometime in September 2010—more than a year before it filed its first provisional patent application on October 21, 2011—breach of the BCDA was effectively impossible. (D.I. 38 at 19–20; D.I. 48 at 10 (relying on D.I. 31, ¶¶ 67, 69, 100.)) However, Gilead's argument is not based on AbbVie's knowledge of the chemical structure alone. Rather, Gilead argues the predictive "mechanistic model" required much more knowledge of PSI-7977 than just its chemical structure—including the knowledge that it could be effective in the human body. (D.I. 42 at 10.) For example, Gilead asserts that,

> Before Abbott could 'predict' whether PSI-7977 would be successful at treating HCV in human patients, Abbott needed to know that it could be effectively delivered within the human body and that it would not be toxic. Abbott also needed to see clinical trial results of PSI-7977 alone before attempting to predict how it might combine with other DAAs.

(*Id.*) It is plausible to infer that the information was used for a reason other than weighing the potential acquisition of Pharmasset. The court finds it is plausible that the PSI-7977 information was instead used in furtherance of the patent applications. As such, the court finds dismissal of Count 11 would be improper and denies AbbVie's Motion to Dismiss as it relates to that Count.

## V.    CONCLUSION

For the reasons stated above, the court grants AbbVie's Motion to Strike and denies-in-part AbbVie's Motion to Dismiss.  Counts 9 and 10 of Gilead's Second Amended Complaint are dismissed with prejudice.

Dated: March 13, 2015

UNITED STATES DISTRICT JUDGE